MICHAEL D. PROUGH (NO. 168741)
mdp@morisonprough.com
DEAN C. BURNICK (NO. 146914)
dcb@morisonprough.com
MORISON & PROUGH, LLP
2540 Camino Diablo, Suite 100
Walnut Creek, CA  94597
Telephone:  (925) 937-9990
Facsimile:  (925) 937-3272

Attorneys for Plaintiff
MT. HAWLEY INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, an unknown business entity,<br><br>        Plaintiff,<br><br>    v.<br><br>CRANE DEVELOPMENT CORPORATION; ABA-ROSEVILLE, LLC;<br><br>        Defendants. | Case No. 3:11-cv-01457-JM-WMC<br><br>MT. HAWLEY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO SET ASIDE DEFAULT<br><br>Date:      October 26, 2016<br>Time:    10:00 a.m.<br>Dept.:   Courtroom 8 |

Pursuant to Local Rule 230(c), plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") submits the following Opposition to defendant Crane Development Corporation's ("CDC") Motion to Set Aside Entry of Default pursuant to Federal Rules of Civil Procedure ("Rule") 55(c).

## I.   INTRODUCTION

CDC has known about this lawsuit since early May 2016.  Nevertheless, it consciously took no action to appear or answer within the time prescribed by law and, as a result, default was entered against CDC on June 28, 2016 (Dkt. No. 10).  CDC knew that its default was taken since shortly after it happened, when the lawyers now appearing for CDC first learned of it (Dkt. No. 11-2 at Exh. L.), but CDC again failed to take timely action to have it set aside.  After weeks of dialogue about why CDC failed to timely protect itself, but never receiving a cogent explanation that could justify setting CDC's default aside, Mt. Hawley filed its Motion for Entry of Default Judgment on August 29, 2016 (Dkt. No. 11).  CDC finally got around to filing its Motion to Set Aside its default on September 12, 2016 (Dkt. #16).  The Court then coordinated the hearings on Mt. Hawley's pending Motion for Entry of Default Judgment with CDC's motion.  (Dkt. No. 17.)

CDC's Motion to Set Aside seeks to blame its delay and inaction on Ford, Walker, Haggerty & Behar ("Ford Walker"), the law firm that its other liability insurers have retained to defend CDC in the ongoing, underlying litigation.  Conspicuously absent from CDC's motion, however, is any explanation why *CDC itself*, a highly sophisticated party well-versed in legal proceedings and processes, delayed for months after first learning of this lawsuit, long after the deadline to respond to the Complaint and after entry of its default, before it decided to do anything.  In truth, the real explanation for CDC's unreasonable delay cannot be found in some excusable neglect or inadvertence on CDC's part, but rather in CDC's calculated and intentional decision to insist that an insurer fund its defense of this declaratory relief case.  CDC played chicken with it carriers, using the threat of default to coerce them to pay for its lawyers herein.

The record demonstrates that, despite knowing of this lawsuit, CDC decided to do nothing about it without an agreement from an insurer to pay for its defense.  Put simply, and instead of permitting this case to proceed months ago, CDC chose to threaten the insurers defending it in the

1   underlying litigation with the entry of default and a default judgment against CDC in this

2   coverage action, if no insurer stepped-up to defend CDC.  Although Mt. Hawley is unaware of a

3   legal basis that would give rise to a duty to defend CDC under a standard liability policy (for this

4   purely declaratory relief lawsuit), RSUI/Landmark, one of several insurers currently defending

5   CDC in the underlying litigation, apparently has agreed to fund CDC's defense in this case.  By

6   the time Ford Walker was asked to step in, however, CDC's default had already been entered.

7        CDC had sufficient wherewithal to defend itself, had it desired.  CDC's pursuit of an

8   insurer funded defense affords it no excuse for flouting its responsive pleading deadline and

9   provides no legal basis to set aside a default.  A legally sophisticated entity like CDC is culpable

10  in the entry of its default where, as here, it intentionally fails to answer and interferes with the

11  progress of the case.  CDC's motion also fails because CDC has presented no meritorious merits

12  defense in response to Mt. Hawley's *prima facie* showing that no duty to defend or indemnity

13  arises under CDC's policies issued by Mt. Hawley for the claims against it in the underlying

14  litigation.  As a final matter, Mt. Hawley will suffer prejudice if CDC's default is set aside

15  because Mt. Hawley will effectively be deprived of a determination that no coverage is owed

16  under the Mt. Hawley policies for the Underlying Lawsuit prior to trial of that case, scheduled to

17  begin on October 14, 2016.

18       No reasonable explanation exists for CDC's failure to timely respond to Mt. Hawley's

19  Complaint.  No evidence supports the relief sought.  CDC's Motion should be denied.

20       II.      FACTUAL BACKGROUND

21       Mt. Hawley's brief in support of its concurrent Motion for Entry of Default Judgment

22  includes a detailed discussion of the factual background of this dispute.  (Dkt. No. 11-1.)  Mt.

23  Hawley provides an updated discussion of the facts relating to the pending motions below.

24       Mt. Hawley and CDC entered into a series of Commercial General Liability ("CGL")

25  policies and Excess Liability policies, each having a one-year term, running consecutively from

26  June 12, 2012 to June 12, 2015.  A certified copy of each CGL and Excess Liability policy issued

27  to CDC is attached to the Mt. Hawley Complaint.  (Dkt. Nos. 1-1 to 1-6.)  Mt. Hawley's

28  Complaint seeks a declaratory judgment pursuant to 28 U.S.C. §2201 that it has no duty to defend

1   or indemnify defendant CDC, and no duty to defend or indemnify defendant ABA-Roseville,

2   LLC ("ABA-Roseville"), for liabilities that each may sustain in a lawsuit entitled ABA Roseville,

3   LLC v. Crane Development Corp. et al. (and related Cross-Actions), San Diego County Superior

4   Court Case No. 37-2014-00005108-CU-CD-CTL (the "Underlying Lawsuit").

5          ABA-Roseville filed the Underlying Lawsuit on March 3, 2014.  That action relates to

6   alleged construction defects that occurred in the building of a hotel known as Hyatt Place

7   Roseville, located at 220 Conference Center Drive, Roseville, California.  Defendant ABA-

8   Roseville (the underlying plaintiff) owns the property and improvements.  Defendant ABA-

9   Roseville was dismissed from this case on October 3, 2016.  (Dkt. No. 19.)  Defendant CDC

10  contracted with ABA-Roseville in July 2008 to construct the project.  CDC used subcontractors to

11  perform all work.  Construction on the hotel was substantially complete by January 26, 2010,

12  some 28 months before the inception of the earliest Mt. Hawley policy, with the City of Roseville

13  issuing a Certificate of Occupancy for the project that date.  Declaration of Dean Burnick in

14  Support of Motion for Default Judgment (Dkt. No. 11-2) at ¶2 and Exhibit A.  Hyatt Place

15  Roseville also opened for business in 2010.  Following its completion, the hotel allegedly

16  suffered from leaks and other problems as a result of poor construction.

17         By letter dated March 25, 2015, counsel retained to defend CDC in the Underlying

18  Lawsuit tendered to Mt. Hawley its defense and indemnity for liability arising from the Second

19  Amended Complaint filed in the Underlying Lawsuit.  That letter states: "Construction was

20  completed in 2010."  Dkt. No. 11-2 at ¶3 and Exhibit B.  On April 2, 2015, CDC's defense

21  counsel in the Underlying Lawsuit wrote to Mt. Hawley, again tendering under the Mt. Hawley

22  policies its claim for defense and indemnity coverage for liability arising from the Underlying

23  Lawsuit.  That letter states: "The notice of completion date for the subject property involved in

24  the litigation is January 26, 2010."  Id. at ¶4 and Exhibit C.  By letter dated April 8, 2015, defense

25  counsel wrote Mt. Hawley again, repeating that "Construction was completed in 2010."  Id. at ¶5

26  and Exhibit D.  Mt. Hawley responded on April 13, 2015 advising that the Continuous or

27  Progressive Injury or Damage ("CPID") Exclusion in CDC's CGL and Excess Liability policies

28  (effective June 12, 2012 to June 12, 2015) barred coverage because the construction project was

completed in 2010 and the CPID Exclusion "precludes coverage for conditions 'which were caused, or … alleged to have been caused, by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this Policy.'"  *Id*. at ¶6 and Exhibit E.

CDC responded on June 5, 2015, once again confirming that "Construction was completed in 2010."  Dkt. No. 11-2 at ¶7 and Exhibit F.  On June 15, 2015, CDC's counsel wrote to Mt. Hawley tendering CDC's defense against the cross-action filed by Capital Glass in the underlying action.  *Id*. at ¶8 and Exhibit G.  On June 25, 2015, Mt. Hawley denied that tender, reiterating the substance of its April 13, 2015 denial letter.  *Id*. at ¶9 and Exhibit H.

By letter dated March 25, 2016, CDC re-tendered its claim for defense and indemnity coverage under the Mt. Hawley policies.  Dkt. No. 11-2 at ¶10 and Exhibit I.  On April 27, 2016, Mt. Hawley's responded to CDC's re-tender with a detailed letter explaining the several reasons why no coverage for CDC (or its principal Phillip Crane) arose under the Mt. Hawley policies. Among other things, that letter included a detailed discussion of the reasons why the CPID Exclusions in the CGL policies operated as a bar to coverage.  *Id*. at ¶11 and Exhibit J.

On August 4, 2016, CDC's personal counsel, Arthur Moreau of Klinedinst Attorneys, tendered ABA-Roseville's Third Amended Complaint ("TAC") filed in the Underlying Lawsuit to Mt. Hawley requesting that his law firm be assigned as independent defense counsel in the case under California's *Cumis* statute, Civil Code §2860.  Burnick Declaration in Support of Opposition to Motion to Set Aside ("Supplemental Burnick Declaration") at ¶ 3 and Exhibit M. On September 14, 2016, Mt. Hawley responded detailing the several reasons why no duty to defend or indemnify CDC or Philip Crane arises from the TAC.  That letter also explained that, because there is no defense obligation, Mt. Hawley has no duty to provide independent counsel under California Civil Code §2860.  *Id*. at ¶ 4 and Exhibit N.

III.     PROCEDURAL BACKGROUND

On April 28, 2016, Mt. Hawley filed its Complaint for Declaratory Relief.  (Dkt. No. 1.) The Complaint names only CDC and ABA-Roseville as defendants.  ABA-Roseville was recently dismissed from the case.  (Dkt. No. 19.)

By letter dated April 29, 2016 addressed to CDC and attaching the Complaint and all

1   related papers, Mt. Hawley asked Phillip Crane, CDC's Registered Agent for Service of Process,

2   to accept service by Notice and Acknowledgement, pursuant to Rule 4 of the Federal Rules of

3   Civil Procedure and Section 415.30 of the California Code of Civil Procedure.  Dkt. No. 11-2 at

4   ¶12 and Exhibit K.  CDC never responded to that letter or its request.  *Id.* at ¶12.  On May 26,

5   2016, Mt. Hawley personally served its Summons and Complaint on CDC.  Again, CDC made no

6   effort to contact Mt. Hawley or to respond to the Complaint.  Mt. Hawley's Certificate of Service

7   was filed on June 15, 2016.  Dkt. No. 6.  Still nothing from CDC.  On June 24, 2016, Mt. Hawley

8   filed its Request for Entry of Default of CDC, supported by evidence.  Dkt. Nos. 7 through 7-1.

9   Silence.  Having failed to appear, answer or otherwise respond to the Complaint within the time

10   allowed by law, CDC's default was entered on June 28, 2016.  Dkt. No. 10.

11          On July 6, 2016, Mt. Hawley was contacted by Ford Walker which acknowledged that

12   CDC had been served, was aware of the case, and knew it was in default.  Dkt. No. 11-2 at ¶15

13   and Exhibit L.  In response to Ford Walker's request that Mt. Hawley agree to set aside the

14   default, Mt. Hawley solicited from CDC the factual bases upon which any motion or stipulation

15   to set aside would be based.  Id.  In Ford Walker's July 8th reply, they explained:

16          The factual bases for the motion is as follows:

17          Crane Development was served on May 27, 2016. Shortly thereafter, notice of the
18          litigation was sent to the various carriers in the underlying complex action (ABA-
            Roseville v. Crane Development Corporation) including nine additional insured and three
19          primary carriers.[1]  We are awaiting a response from the carriers as to whether our office
            would be retained to represent Crane Development in the action, but unfortunately no
20          response had [sic] been provided.  We also posed the question to personal counsel for Mr.
            Crane, however, they had no input.  We continued to wait and follow up regarding
21          retention.  Immediately upon granted authority to proceed with responding to the
            Complaint filed by Mt. Hawley, we learned that on June 28, 2016, the clerk entered a
22          default against Crane Development, which prompted my call to you requesting a
            stipulation that the default be set aside.   [*Id.*, Exhibit L at Page 61.]

23          Mt. Hawley responded on July 11, 2016 first by noting that counsel's explanation is silent

24   on the first full month CDC was on notice of this lawsuit following receipt of Mt. Hawley's April

25   _____

26   [1]      Curiously, while finding the available time to correspond with *twelve* other insurers about
     this lawsuit, CDC could not be bothered to take the time to prepare an answer, or even to reach
27   out to Mt. Hawley.  CDC ignored the lawsuit, ignored Mt. Hawley and ignored the fact it was
     defaulting, while pressing its liability insurers to pay for CDC's lawyers in this case--an
28   obligation that they in all likelihood do not owe contractually.

29, 2016 letter.  Mt. Hawley also questioned what legitimate role, if any, the dozen liability insurers for CDC would play this declaratory relief lawsuit between Mt. Hawley and CDC. "That Crane was apparently 'playing chicken' with those insurers by permitting this default to be taken… does not seem to be a valid reason for Crane's thumbing its nose at the responsive pleading deadline."  *Id.*, Exhibit L at Page 60.  For these reasons, Mt. Hawley explained that CDC's delay "does not appear to be the result of inadvertence, mistake or excusable neglect, but rather gamesmanship."  *Id.*, Exhibit L at Page 61.  Ford Walker replied to Mt. Hawley July 12, 2016, confirming its prior advice:

> [A]s counsel for CDC, we attempted to obtain authority from the various carriers involved to provide a defense of the claims asserted in the DJA lawsuit file by Mt. Hawley.  Upon being granted authority to appear for CDC and learning of the entry of default, we immediately contacted [Mt. Hawley] to discuss this matter.  As CDC's counsel we are unable to provide any specific reasons for personal counsel's actions beyond what I have already expressed to you, which is that all involved have been consumed with the complexities of the underlying litigation.  [*Id.*, Exhibit L at Page 61.]

Despite Mt. Hawley's further attempts, no valid, viable or credible excuse for why CDC refused to timely respond to its Complaint has ever been offered.  Rather, the only explanation offered is that CDC purposefully let the litigation deadlines pass because it simply and understandably had no intention of spending its time and money to contest this action itself.

## IV.   LEGAL ARGUMENT

The Federal Rules provide that a "court may set aside an entry of default for good cause."  Fed. R. Civ. Pro. 55(c).  To determine "good cause", a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it has a meritorious defense; or (3) whether reopening the case would prejudice the other party.  *See Franchise Holding II v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 3 925-26 (9th Cir. 2004).  This standard, the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive.  A finding that any one of these factors is true is sufficient reason for the Court to refuse to set aside the default.  *See id.*; *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).  The Court is thus free to deny CDC's Motion to Set Aside "if any of the three factors was true." *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000).

1    CDC bears the burden of showing that any factor favors setting aside the default. *TCI*

2    *Group*, *supra*, 244 F.3d at 697; *Franchise Holding II*, *supra*, 375 F.3d at 926.  For the reasons

3    detailed below, CDC has failed to meet its burden.

4                    A.   CDC is Clearly Culpable in Permitting Its Default to be Entered

5         "[A] defendant's conduct is culpable if he has received actual or constructive notice of the

6    filing of the action and intentionally failed to answer." *TCI Group*, 244 F.3d at 697 (emphasis

7    omitted) (quoting *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.

8    1988)); *see also Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).  To treat a

9    failure to answer as culpable, the movant must have acted with bad faith, such as an "intention to

10   take advantage of the opposing party, interfere with judicial decision making, or otherwise

11   manipulate the legal process." *TCI Group*, *supra*, 244 F.3d at 697.

12        The Ninth Circuit has "typically held that a defendant's conduct was culpable for purposes

13   of the [good cause] factors where there is no explanation of the default inconsistent with a

14   devious, deliberate, willful, or bad faith failure to respond."  *TCI Group*, *supra*, 244 F.3d at 698.

15   This approach is consistent with *Pioneer Investment Services Co. v. Brunswick Associates Ltd*,

16   507 U.S. 380, 388, 394-95 (1993), under which simple carelessness is not sufficient.  *See TCI*

17   *Group*, *supra*, 244 F.3d at 696-97; *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009).

18        When considering a legally sophisticated party's culpability in a default, however, an

19   understanding of the consequences of its actions may be assumed, and with it, intentionality.

20   *Franchise II Holdings*, *supra*, 375 F.3d at 926; *Direct Mail Specialists, Inc. v. Eclat*

21   *Computerized Techs., Inc.*, 840 F.2d 685, 690 (because defendant, a lawyer, "has received actual

22   or constructive notice of the filing of the action and failed to answer," its conduct is culpable)

23   (quoting *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)).  As a result, actual

24   or constructive notice of the filing of an action and the failure to answer it is the proper standard

25   by which to measure the culpability of a moving party that is "a legally sophisticated entity or

26   individual."  *United States v. Signed Personal Check No. 730*, 615 F.3d 1085, 1093 (9th Cir.

27   2010) (quoting *Franchise II Holdings*, *supra*, 375 F.3d at 926).

28        Here, CDC concedes that it is a legally sophisticated party which was served with Mt.

Hawley's Complaint in this case and failed to file a responsive pleading because of "extraneous issues." (Dkt. No. 16 at 2:7-8 (CDC served on May 27, 2016) and 4:8-16 ("While admittedly Crane failed to file a timely response with the Court, Crane's conduct was excusable because unlike situations which a defendant is not well-versed in the legal process, here Crane is too involved in the Underlying Action, and along with its counsel has devoted over two years to an incredibly complicated and multi-faceted lawsuit"); Dkt. 16-2 (Declaration of Jon A. Hammerbeck) at ¶6 (same). Based on these concessions, the element of intentionality needed to establish the culpability of CDC, as a legally sophisticated party that knew of, and failed to timely respond to, Mt. Hawley's Complaint, is met. *Franchise II Holdings*, *supra*, 375 F.3d at 926; *Direct Mail Specialists, supra,* 840 F.2d at 690; U.S *v. Signed Personal Check No. 730*, *supra*, 615 F.3d at 1093.

Under the facts presented, however, CDC's conduct is even more inexcusable. Despite being on actual notice of the lawsuit for months prior to the entry of default against it, CDC did nothing. CDC's delay cannot be excused on the basis that it did not know what to do. CDC has been fully and skillfully defending itself against the Underlying Lawsuit for years and has also demonstrated sophistication and skill securing an insurer-funded defense of that case. Here, the record reveals that CDC failed to appear or to respond to Mt. Hawley's Complaint intentionally as a means of pressuring one or more insurance carriers currently defending it in the Underlying Lawsuit also to fund its defense of this declaratory relief case. CDC's calculated and deliberate inaction, and the associated threat that its default would be taken by Mt. Hawley, was employed as a means of compelling an insurer funded defense of this case. CDC's pressure tactic worked, but only too late. As CDC (via counsel) has conceded, by the time RSUI/Landmark authorized Ford Walker to appear in the case, default had already been entered. This is not the type of case neglect, however, that can or should be excused under Rule 55(c).

Intentionally delaying months after expiration of the time prescribed by the FRCP to appear and respond to Mt. Hawley's Complaint for Declaratory Relief is, by its very nature, an intentional delaying of these proceedings. Relying on the Court's discretionary authority to set aside a default properly entered against it to pressure an insurer to pay for its defense is likewise

1    an intentional manipulation of the legal process.

2         This delay tactic serves to unduly burden the Court and the parties with needless motion

3    practice, and interferes directly with the Court's role as judicial decision maker.  Even assuming

4    culpability is not already presumed by virtue of its high degree of legal sophistication, CDC's

5    extended delay was for the improper purpose of leveraging an insurer funded defense of this case.

6    As such, the explanation offered for its default demonstrates a deliberate, willful, and bad faith

7    failure to respond to the Mt. Hawley Complaint.  *TCI Group*, *supra*, 244 F.3d at 697-698;

8    *American Ass'n of Naturopathic Physicians, supra*, 227 F.3d at 1108.  Even taking CDC's

9    sophistication out of the mix, its conduct would still be deemed culpable.  This conclusion is

10   bolstered by a close reading of CDC's motion.

11        Despite bearing the burden of showing good cause to set aside its default, CDC's moving

12   papers and supporting evidence fail to explain why CDC decided to ignore the deadline to

13   respond to the Complaint imposed by the FRCP.  Nowhere in its motion does CDC mention or

14   attempt to explain why it failed to respond in any way to Mt. Hawley's letter dated April 29, 2016

15   to Philip Crane enclosing copies of the Summons, Complaint, and related suit papers.  (Dkt. 11-2

16   at Exhibit K.)  Instead, CDC would have the Court focus on when *Ford, Walker* first became

17   aware of this lawsuit.  (Dkt. No. 16-2 at ¶5 ("On or about July 6, 2016, my firm and I first became

18   aware of the entry of default against Crane by checking the online civil docket…")  Nowhere in

19   CDC's motion does it grapple with or attempt to justify its calculated decision to delay this case

20   while it attempted to secure an insurer funded defense from one or more insurers already

21   defending it in the Underlying Lawsuit.  (Dkt. 11-2 at Exhibit L.)  Similarly, CDC's motion is

22   silent on why CDC failed to do anything to protect its rights in this case while the insurers to

23   which CDC tendered its defense were deciding how to respond.  CDC's motion also doesn't

24   mention or explain why CDC could not even bother to pick up the phone and ask Mt. Hawley

25   to stipulate to extend the deadline to respond to the Complaint while its insurers were deciding how

26   they wanted to handle this declaratory relief case.  Despite ample opportunity for CDC to explain

27   the real reasons why it delayed months, its motion is deafeningly silent on them.  Mt. Hawley

28   submits that it is because no good explanation exists.  CDC's game of brinksmanship backfired,

1    and its insurers' belated capitulation and effort to undue the default cannot change the fact that

2    CDC intentionally permitted it to happen.

3                              B.  CDC Has Failed to Offer a Meritorious Defense

4            To have a default set aside, the movant must present specific facts that would constitute a

5    defense to the claims against it.  *Franchise II Holdings*, *supra*, 375 F.3d at 926 (citing *Madsen v.*

6    *Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)).  A "mere general denial without facts to support it" is not

7    enough to justify vacating a default or default judgment.  *Id*.  Here, CDC's Motion to Set Aside

8    includes a proposed Answer which offers no facts and nothing more than a general denial.  (Dkt.

9    No. 16-2 at Exhibit 1.)  With the limited exception of admitting the most basic and undisputed

10   facts presented by this case, like the identity of the parties and the Court's jurisdiction, CDC's

11   proposed Answer denies virtually everything else.  These denials extend to Mt. Hawley's detailed

12   recitations of the language of the insurance contracts and its explanations why no duty to defend

13   or indemnify CDC arises from the Underlying Lawsuit.  (*See*, *e.g.*, Dkt. No. 16-2 at ¶¶49-59.)

14   Seventeen affirmative defenses are also identified.  Nowhere in its moving papers or proposed

15   responsive pleading, however, does CDC allege specific facts that would constitute a defense to

16   Mt. Hawley's declaratory relief claim.  Remarkably, the opposite is true.  CDC's moving papers

17   include facts reaffirming that Mt. Hawley's coverage position was correct.

18           Mt. Hawley's Complaint asserts one cause of action against CDC: seeking a declaratory

19   judgment under 28 U.S.C. §2201 that Mt. Hawley owes CDC no liability insurance coverage for

20   the Underlying Lawsuit under Mt. Hawley's primary and excess policies.  Mt. Hawley's claim

21   against CDC is rooted in the language of the insurance contracts (Complaint, ¶¶9-25 and Exhibits

22   A-F (Dkt. Nos. 1-1 through 1-6), the undisputed and undeniable timing of the completion of the

23   construction project (Complaint, ¶¶26-27), and the claims raised by the Underlying Lawsuit

24   (Complaint, ¶¶28-37).  Among other things, Mt. Hawley's Complaint details that CDC's work on

25   the project was substantially complete by January 26, 2010, over 2 years before the earliest Mt.

26   Hawley policy period commenced.  (Complaint, ¶¶8, 26.)  Following completion, the hotel

27   suffered leaks and other problems allegedly as a result of its poor construction.  (Complaint, ¶27.)

28   Based on these facts, Mt. Hawley's Complaint demonstrates that the Continuous and Progressive

1   Injury or Damage ("CPID") Exclusion, Breach of Contract Exclusion, and Amendment of Other

2   Insurance – Excess Provision Endorsement, among other contract provisions, operate to preclude

3   any defense or indemnity obligations to CDC under the policies.  (Complaint, ¶¶8-18, and

4   Exhibits A-C.)  The Complaint also demonstrates that Mt. Hawley's excess liability policies

5   follow form to its CGL policies, including all exclusions and other limiting language.

6   (Complaint, ¶¶8, 19-25, and Exhibits D through F.)  The Complaint further recounts the history of

7   CDC's claims for coverage and Mt. Hawley's detailed denials and reservations of rights.

8   (Complaint at ¶¶38-48; Burnick Declaration at ¶¶2-3, and Exhibits A and B.)  Finally, the

9   Complaint outlines the several specific grounds supporting Mt. Hawley's claim positions.

10  (Complaint at ¶¶49-59 and Prayer for Relief at ¶1; Burnick Declaration at ¶¶2-3, and Exhibits A

11  and B.)

12      The merits of Mt. Hawley's claim are confirmed by the record.  For example, one basis

13  for Mt. Hawley's declinations was the clear application of its CPID Exclusion.  The CPID

14  Exclusions state in part:

15      This insurance does not apply to any damages because of or related to … "property

16      damage,"…:

17      a.      Which first existed, or are alleged to have first existed, prior to the inception date
                of this  Policy; or

18      b.      Which are, or are alleged to be, in the process of taking place prior to the inception
                date of this Policy, even if the actual or alleged… "property damage," …

19              continues during this policy period; or

20      c.      Which were caused, or are alleged to have been caused, by any defect, deficiency,
                inadequacy or condition which first existed prior to the inception date of this

21              Policy…

22      It is beyond all dispute, and CDC repeatedly told Mt. Hawley, that its construction of the

23  subject Hyatt Place hotel was completed in 2010.  (*See* Dkt. 11-2 at Exhibits A, B, C, D and F.)

24  Thus, Mt. Hawley clearly and repeatedly advised CDC, the CPID Exclusion in CDC's CGL and

25  Excess Liability policies barred coverage for the underlying action, because CDC's construction

26  was completed in 2010 and the CPID Exclusion "precludes coverage for conditions 'which were

27  caused, or … alleged to have been caused, by any defect, deficiency, inadequacy or condition

28  which first existed prior to the inception date of this Policy.'"  *Id.* at Exhibits E, H and J.

1    By letter dated June 5, 2015, CDC's defense counsel once again confirmed that

2    "Construction was completed in 2010." (Dkt. No. 11-2 at Exhibit F.)  Ten days later, counsel

3    wrote Mt. Hawley tendering CDC's defense against the cross-action filed by Capital Glass in the

4    underlying litigation.  *Id*. at Exhibit G.  Mt. Hawley denied the tender of the *Capital Glass* cross-

5    action by letter dated June 25, 2015 reiterating the substance of its April 13, 2015 denial letter.

6    *Id*. at Exhibit H.  CDC re-tendered its claims on March 25, 2016.  *Id*. at Exhibit I.  In response,

7    Mt. Hawley published its April 27, 2016 letter including detailed discussion why, among other

8    contract provisions, the CPID Exclusions bar coverage for liability CDC has or may sustain

9    arising from the underlying action.  *Id*. at Exhibit J.  CDC re-tendered its claims yet again on

10   August 4, 2016 under the TAC filed in the Underlying Lawsuit.  Supplemental Burnick

11   Declaration at Exhibit M.  In response, on September 14, 2016, Mt. Hawley responded detailing

12   the several reasons why no duty to defend or indemnify CDC or Philip Crane arises from the

13   TAC, including another discussion of why the CPID exclusion (among other exclusions) applies

14   to bar coverage for the Underlying lawsuit.  *Id*. at Exhibit N.

15   The CPID exclusions in the Mt. Hawley policies are broad and unambiguous.  Like many

16   similar exclusions drafted by insurers in response to the second *Montrose* decision in 1995, to

17   preclude coverage in situations of continuous and progressive damage the Mt. Hawley exclusions

18   remove coverage of, and any duty to defend claims for, property damage which existed before

19   inception of the policy or which were in the process of taking place prior to the policy's inception.

20   The exclusionary endorsements in CDC's policies with Mt. Hawley also contain an additional

21   provision, however, extending the exclusion to all claims related to property damage caused or

22   allegedly caused by a *defect or condition* which first existed prior to the inception of the policy.

23   It is well-established that an insurer is free to choose the risks it will insure.  Thus, an

24   insurer "is entitled to write a policy which limits its coverage . . . and the limitations in the

25   provisions of the policy must be respected." *Argonaut Ins. Co. v. Transport Indem. Co.*, 6 Cal.3d

26   496, 508 (1972); *see also Legarra v. Federated Mut. Ins.*, 35 Cal.App.4th 1472, 1479 (1995)

27   (unless it violates public policy, "a clear exclusion will be respected").  Mt. Hawley thus had the

28   right to exclude coverage, upon policy inception, for all pre-existing defects or conditions that

1  might lead to property damage.  *Argonaut*, *supra*, 6 Cal.3d at 508.  The exclusion's broad

2  language with regard to any use of the phrase "*any* defect, deficiency, inadequacy or condition,"

3  barring all coverage for "property damage" resulting from any such pre-exiting "defect,

4  deficiency, inadequacy or condition," applies broadly to preclude any potential coverage of

5  claims caused by work of the insured that pre-dated the policy period.  Where broad language is

6  used to effect a clear purpose, the breadth of the exclusion must be respected and the provision

7  should be applied as written.  *Bay Cities Paving & Grading v. Lawyer's Mutual Ins. Co.*, 5

8  Cal.4th 854, 868 (1993).

9        Here, all of CDC's work on the Hyatt Roseville project occurred between July 30, 2008

10  (when ABA-Roseville and CDC contracted for the construction) and January 26, 2010, the date

11  of substantial completion.  The CPID Exclusion bars coverage for property damage which was

12  "caused, or are alleged to have been caused" by defects or conditions existing before inception of

13  the policy.  Plainly, any construction defect or condition attributable to CDC arising from its

14  construction of the Project would have *necessarily existed* by the time CDC's work was

15  completed in January of 2010, over two years before Mt. Hawley's initial policies incepted.

16  Hyatt Roseville also opened and was in operation in 2010, also well before Mt. Hawley's earliest

17  policies began on June 12, 2012.  The CPID Exclusions[2] in the Mt. Hawley policies operate to

18  exclude any potential for coverage and hence any duty to defend CDC in the underlying action.[3]

19

20    [2]    Mt. Hawley raised several other defenses, in addition to the CPID Exclusion, which singly
   or collectively would also operate to bar coverage for some or all of the claims raised in the

21  Underlying Lawsuit.  All defenses are reserved.  Mt. Hawley does not brief in detail all of its
   coverage defenses in this memorandum.  Its discussion of the application of its CPID Exclusions

22  to the CDC's claims arising from the Underlying Lawsuit illustrates its failure to present facts
   sufficient to rebut this dipositive claim.

23

24    [3]    This plain, common sense result was reached in an unreported California decision
   involving similar language, and also by a United States District Court in Florida applying a

25  similar version of Mt. Hawley's own CPID Exclusion.  *See Mt. Hawley In. Co. v. Dania Dist.
   Centre, Ltd.*, 763 F.Supp.2d 1359 (S.D. Fla. 2011), *affirmed* 2013 WL 1150146 (11th Cir. 2013)

26  (analyzing and applying CPID Exclusion); *Golden Eagle Ins. Corp. v. Gerling America Ins. Co.*,
   2009 WL931704, at *5 (Cal. Ct. App. 2009) (applying exclusion for property damage arising out

27  of any "defect, deficiency, inadequacy or dangerous condition which existed prior to the inception
   of the policy period" because defective work "*necessarily existed* by the time the project was

28  completed.") (Emphasis added.)

MORISON &
PROUGH, LLP

1      It is CDC's burden to support its Motion to Set Aside with specific facts that may, if

2  proven, constitute a defense to Mt. Hawley's Complaint.  (*Franchise II Holdings*, *supra*, 375 F.3d

3  at 926 (conclusory statements that a dispute exists is insufficient).  CDC has failed to do so.  As

4  pled, Mt. Hawley's Complaint is more than sufficient to state a valid claim for a declaration that

5  CDC is owed no defense or indemnity coverage for the Underlying Lawsuit under the Mt.

6  Hawley policies by operation of the CPID Exclusion.  Nowhere in CDC's motion or proposed

7  responsive pleading, however, are specific facts alleged that may serve as a defense to the

8  application of the CPID Exclusions (or any of the other dispositive coverage defenses) raised by

9  Mt. Hawley.  To the contrary, CDC reiterates in the body of its motion and in the Hammerbeck

10  Declaration that the project was completed in January 2010, over two years before the earliest Mt.

11  Hawley policy commenced to run.  (Dkt. No. 16 at 1:18-20; and Dkt. 16-2 at ¶3.)

12      Despite its burden to do so, CDC has raised no facts that could support a meritorious

13  defense to the Mt. Hawley's claim that the CPID Exclusions apply to remove any defense or

14  indemnity duty arising from the Underlying Lawsuit under the Mt. Hawley policies.  Because no

15  meritorious defense to Mt. Hawley's declaratory relief claim is identified, it would be a waste of

16  judicial resources to proceed.  This is another reason why CDC's motion should be denied.

17          C.  Mt. Hawley Will Be Prejudiced if CDC's Default is Set Aside

18      "To be prejudicial, the setting aside of a judgment must result in greater harm than simply

19  delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his

20  claim will be hindered.'" *TCI Group*, 244 F.3d at 701 (citing *Falk v. Allen*, 739 F.2d 461, 463

21  (9th Cir. 1984) (*per curiam*)).

22      Mt. Hawley filed this lawsuit well before the Underlying Lawsuit was scheduled to go to

23  trial for one reason:  it desired a quick resolution of its declaratory relief action and the claims and

24  controversies it embodies.  If no duty to defend or indemnify CDC is owed as Mt. Hawley

25  contends, it was Mt. Hawley's intention to obtain a judicial declaration of the propriety of its

26  coverage positions before the Underlying Lawsuit goes to trial.  If Mt. Hawley is proven wrong,

27  and the court finds that a defense duty is owed to CDC, it would undertake to comply with that

28  commitment before trial.  In that event, Mt. Hawley would also have available to it other rights as

1   a defending insurer.  CDC's decision to do nothing in response to Mt. Hawley's Complaint,

2   however, has deprived Mt. Hawley of the right to obtain a judicial declaration of its rights and

3   duties, if any, under the CDC / Mt. Hawley insurance contracts before trial of the Underlying

4   Lawsuit.  In fact, the hearing on CDC's Motion to Set Aside is not scheduled until 12 days after

5   trial of the Underlying Lawsuit is currently scheduled to start on October 14, 2016.

6        CDC's delays have deprived Mt. Hawley of its right to a judicial declaration prior to trial

7   of the Underlying Lawsuit.  This is sufficient under the facts presented to find at least a

8   possibility of prejudice.  *Franchise Holding II*, *supra*, 375 F.3d at 926 (affirming denial of motion

9   to set aside default judgment because there existed a possibility that it would prejudice plaintiff

10  through further delay).

11       V.      <u>CONCLUSION</u>

12       For each of the foregoing reasons, CDC's Motion to Set Aside Default should be denied.

13  Dated: October 13, 2016                    Respectfully submitted,

14                                             MORISON & PROUGH, LLP

15

16                                             By:/s/ Dean C. Burnick
17                                                  Dean C. Burnick

18                                             Attorneys for Plaintiff
                                               MT. HAWLEY INSURANCE
19                                             COMPANY

20

21

22

23

24  Doc 406

25

26

27

28