MICHAEL D. PROUGH (NO. 168741)
mdp@morisonprough.com
DEAN C. BURNICK (NO. 146914)
dcb@morisonprough.com
MORISON & PROUGH, LLP
2540 Camino Diablo, Suite 100
Walnut Creek, CA 94597
Telephone: (925) 937-9990
Facsimile: (925) 937-3272

Attorneys for Plaintiff
MT. HAWLEY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, an Illinois corporation authorized to transact business in California,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CRANE DEVELOPMENT CORPORATION, a California corporation; ABA-ROSEVILLE, LLC, a Delaware limited liability company, and DOES 1-25, et al.;<br><br>　　　　　Defendants. | Case No. 2:16-cv-00892-JAM-EFB<br><br>DECLARATION OF DEAN C. BURNICK IN SUPPORT OF OPPOSITION TO MOTION TO SET ASIDE DEFAULT<br><br>Date:　　October 26, 2016<br>Time:　　10:00 a.m.<br>Dept.:　　Courtroom 8 |

I, Dean C. Burnick, declare:

1.　　I am an attorney with Morison & Prough, LLP, counsel of record for plaintiff

Mt. Hawley Insurance Company ("Mt. Hawley") in the captioned action.  I have personal

knowledge of the facts in this declaration and if called upon to testify, I could and would do so

competently.  This Declaration is submitted in support of Mt. Hawley's opposition to defendant

Crane Development Corporation's ("CDC") Motion to Set Aside Default and is intended to

update the record to reflect development having bearing on both pending motions since

August 26, 2016, when Mt. Hawley filed its Motion for Entry of Default Judgment.

2.　　Concurrently with Mt. Hawley's Motion for Entry of Default Judgment, I filed my

1    Declaration in support attaching Exhibits A through L. (Dkt. No. 11-2.) My Declaration in

2    support of Mt. Hawley's Motion for Entry of Default Judgment, including Exhibits A through L,

3    is reiterated and incorporated herein by this reference.

4         3.     On August 4, 2016, CDC attorney Arthur Moreau of Klinedinst Attorneys wrote

5    Mt. Hawley tendering the defense and indemnity of CDC and Philip Crane against the Third

6    Amended Complaint filed in the underlying *ABA-Roseville v. Crane Development Corporation*

7    action. That letter also attached the lengthy Third Amended Complaint in that case. A true and

8    correct copy of attorney Moreau's August 4, 2016 tender (without enclosure) is attached, marked

9    Exhibit M.

10        4.     On September 14, 2016, Mt. Hawley wrote CDC's counsel fully reserving rights

11    and detailing, among other things, why the Continuous or Progressive Injury or Damage

12    Exclusion in CDC's CGL and Excess Liability policies barred coverage for conditions "caused,

13    or … alleged to have been caused, by any defect, deficiency, inadequacy or condition which first

14    existed" prior to the inception date of the policy. A true and correct copy of Mt. Hawley's

15    September 14, 2016 letter is attached, marked Exhibit N. No response to that letter has been

16    received.

17        I declare under penalty of perjury under the laws of the United States of America that the

18    foregoing is true and correct. Executed on October 12, 2016, at Walnut Creek, California.

19

20                           Dean C. Burnick

21

22

23

24

25

26

27    375

28

# EXHIBIT M



Arthur S. Moreau, Esq. • Shareholder
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131 Ext. 2209
(619) 238-8707 Fax
amoreau@klinedinstlaw.com

August 4, 2016

**VIA ELECTRONIC & U.S. CERTIFIED MAIL**
Jack Lewis
505 14th Street, Suite 100
Oakland, CA 94612
Jack.lewis@rlicorp.com

Re:  ***ABA-Roseville, LLC v. Crane Development Corporation, et al.***
Your Policy No.:  MGL0176717 (Effective 6/12/12-13)
Your Claim No.:  00411196
Your Insured:  Unknown
Our File No.:  3231-1003

Dear Mr. Lewis:

Crane Development Corporation and Philip Crane recently engaged Klinedinst P.C. with regard to the *ABA-Roseville v. Crane Development Corporation, et al.* litigation. I am writing to formally request assignment of the above-referenced case to our law firm as *Cumis* counsel.

Plaintiff recently filed a Third Amended Complaint (enclosed) alleging certain intentional acts as alternative pleadings, in addition to the negligence allegations, in this matter. Plaintiff has associated claims for punitive damages with these allegations of intentional acts. Plaintiff has expressly pled punitive damages against Crane Development Corporation and its Principal, Philip Crane. The carrier will not cover indemnity for such damages and this gives rise to an existing conflict of interest between any defense counsel unilaterally selected in the interests of your insured.

We understand that your office responded to our clients' initial tender of their defense under the Mt. Hawley Insurance Co. ("Mt. Hawley") insurance policies in effect. Mt. Hawley has agreed to defend the lawsuit under the Policy and/or Claim Number referenced above, but has done so pursuant to numerous reservations of their rights under the Mt. Hawley insurance policies.

To adequately defend this lawsuit, defense counsel necessarily be working closely with Phil Crane and Crane Development Corporation ("CDC"). This close working relationship will necessarily require him or her to obtain and utilize confidential information bearing directly on these myriad issues of coverage and coverage defenses, covered versus under covered claims, and the interplay and characterization of covered and uncovered damages. This necessitates the appointment of *Cumis* counsel, especially where the insurance carrier is reserving its rights to recoup portions of the defense costs from your insured, to withdraw from your insured's defense during the midst of the litigation, to sue your insured and seek declaratory relief and/or damages,

Los Angeles   •   Sacramento   •   San Diego •   Santa Ana   •   Seattle

*ABA-Roseville, LLC v. Crane Development Corporation, et al.*
August 4, 2016
Page 2

and to not indemnify various claims and damages.  This coverage position puts Mt. Hawley, and any other defending carrier reforms, *Cumis* counsel in this matter directly at odds with their insured's interests in this litigation.

<u>*Cumis* Obligations Under California Law</u>

The relationship between an insurer and its insured is a fiduciary relationship.  Among the many obligations owed by the insurance carrier to its insured(s) is an obligation to provide independent counsel in certain circumstances where the insurer's and the insured's interests diverge.  The obligation to provide independent (*Cumis*) counsel has been codified by California Code of Civil Procedure § 2860.  That statute provides, in pertinent part, as follows:

> **"(a)** If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section."

> **"(b)** For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist."

In *Cumis*, the trial court ruled Cumis Insurance was required to pay for the insureds' hiring of independent counsel, rejecting Cumis' arguments to the contrary.  *Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 364.  "What the defense attorney in the third party case **does impacts the coverage case**, in that, the questions of coverage depends [sic] on the development of facts in the third party case and their proper development is left to the attorney paid for by the Carrier."  The court further explained its ruling:

> **"The Carrier is required to hire independent counsel because an attorney in actual trial would be tempted to develop the facts to help his real client, the Carrier Company, as opposed to the Insured, for whom he will never likely work again**.  In such a case as this, the Insured is placed in an impossible position; on the one hand the Carrier says it will happily defend him and on the other it says it may dispute paying any judgment, but trust us.  The dictum in *Gray* flies in the face of the reality of insurance defense work.  Insurance companies hire relatively few lawyers and concentrate their business.  A lawyer who does not look out for the Carrier's best interest might soon find himself out of work."

*ABA-Roseville, LLC v. Crane Development Corporation, et al.*
August 4, 2016
Page 3

The California Supreme Court also has affirmed this obligation to appoint independent counsel in cases where some of the claims are covered, some are not, and the insurance carrier is reserving its rights.

"Similarly, in cases involving multiple claims against the insured, some of which fall within the policy coverage and some of which do not, the insurer may be subject to substantial temptation to shape its defense so as to place the risk of loss entirely upon the insured. *Tomerlin v. Canadian Indemnity Co.* (1964) 61 Cal.2d 638.

To this end, the Court held that:

"Customarily, insurers, in cases involving tort claims in excess of policy limits, notify the insured that he may employ his own attorney to participate in the defense. (*Id.* at p. 1169.) A like duty must arise in the instant case in which potential conflict stemmed not only from the multiple theories of the Villines complaint and the propriety of settlement, but from the total absence in defendant of any economic interest in the outcome of the suit."

*Tomerlin, supra*, 61 Cal.2d at 647. Thus, the California Supreme Court recognized where multiple theories of recovery are alleged and some theories involve uncovered conduct under the policy, a conflict of interest exists. *Tomerlin* concluded: "In actions in which . . . the insurer and insured have conflicting interests, the insurer may not compel the insured to surrender control of the litigation. [Citations.]" *Tomerlin, supra*, 61 Cal.2d at p. 648. If the insurer must pay for the cost of defense and, when a conflict exists, the insured may have control of the defense if he wishes, it follows the insurer must pay for such defense conducted by independent counsel.

Based on California Civil Code section 2860(b) and *San Diego Naval Fed Credit Union v. Cumis Ins. Society, Inc.*, an insurer is obligated to pay for independent counsel for its insured wherever there is a reservation of rights and the outcome of the insurance coverage issues can be controlled by counsel first retained by the insurer for the defense of the claim. *San Diego Naval Fed Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 385. A serious conflict of interest occurs when the insurer's retained counsel obtains information bearing directly on the issue of coverage during the course of preparation of the lawsuit. *Id.*

<u>Appointment of *Cumis* Counsel is Required in This Circumstance</u>

Given the many claims involved in this case, the fraud claims, and Mt. Hawley's numerous reservation of rights, an actual conflict of interest plainly exists between Mt. Hawley and the interest of Philip Crane and Crane Construction. Plaintiffs' claims include allegations which Mt. Hawley and its appointed counsel may assert to be ineligible for defense and/or indemnity under Mt. Hawley's insurance agreement. Furthermore, the facts alleged in this case give rise to claims for uncovered, punitive damages which also are excluded from coverage under the Mt. Hawley's insurance agreement(s).

*ABA-Roseville, LLC v. Crane Development Corporation, et al.*
August 4, 2016
Page 4

Here, Mt. Hawley's appointed defense counsel will be in a position to control whether some of the allegations and/or damages will be covered by the policy of insurance issued by Mt. Hawley.

> "The governing principle underlying *Cumis* and section 2860 is
> the attorney's ethical duty to the clients. . . . an attorney
> representing the interests of the insurer and insured is subject to the
> rule a "conflict of interest occurs whenever [a] common lawyer's
> representation of the one is rendered *less effective* by reason of his
> representation of the other." *Golden Eagle Ins. Co. v. Foremost
> Ins. Co.* (1993) 20 Cal.App.4th 1372, 1396. [citation omitted]

Thus, the same attorneys who look to Mt. Hawley for employment will be tasked with developing information that could shape or determine the dispute between Mt. Hawley and the interest of Philip Crane and Crane Construction concerning the various coverage disputes raised by Mt. Hawley's coverage reservation. *Rockwell International Corp. v. Superior Court* (1994) 26 Cal.App.4th 1255, review denied.

A conflict of interest exists between Mt. Hawley and Philip Crane and Crane Construction, and this causes an irreconcilable division of loyalty for the attorney unilaterally appointed by Mt. Hawley to represent Philip Crane and Crane Construction in this matter. This conflict of interest and division of loyalty is a legitimate concern to your insured, who requires zealous representation from attorneys with undivided loyalties and independent judgment relative to the very serious allegations set forth in the complaint.

On behalf of Philip Crane and Crane Construction, I urge you to acknowledge the rights of Philip Crane and Crane Construction to the appointment of *Cumis* counsel and to approve their request that this firm be appointed to act as their *Cumis* counsel as soon as possible. Time is of the essence due to the upcoming trial date and the legitimate concerns expressed by your insureds that their interests will be unfairly compromised.

Philip Crane and Crane Development Corporation have engaged Klinedinst PC as personal counsel. A *Cumis* obligation has been triggered and Philip Crane and CDC are entitled to select independent counsel. Crane and CDC have already Klinedinst PC to represent their interests in this matter. Accordingly, I request you retain this firm as Philip Crane's and CDC's *Cumis* counsel. If you have any questions regarding our firms qualifications or require additional information, please do not hesitate to contact me at any time.

*ABA-Roseville, LLC v. Crane Development Corporation, et al.*
August 4, 2016
Page 5


I thank you in advance for your consideration of this issue.   I look forward to hearing from you at your very earliest convenience.

Very truly yours,

KLINEDINST PC

ARTHUR S. MOREAU

ASM:ceb
Enclosure

cc: client

16721856v1

# EXHIBIT N



**MORISON &**
**PROUGH, LLP**

2540 Camino Diablo, Suite 100
Walnut Creek, CA 94597
Telephone: 925.937.9990
Facsimile: 925.937.3272

September 14, 2016

Arthur S. Moreau, Esq.
Klinedinst Attorneys
501 West Broadway, Suite 600
San Diego, CA 92101

Re:   *ABA-Roseville, LLC v. Crane Development Corp. et al.*
      San Diego County Superior Court Case No. 37-2014-00005108-CU-CD-CTL
      Named Insured:      Crane Development Corporation
      Policy Nos.:        MGL0176717 (eff. 6/12/2012 to 6/12/2013)
                          MGL0178266 (eff. 6/12/2013 to 6/12/2014)
                          MGL0180791 (eff. 6/12/2014 to 6/12/2015)
                          MXL0370564 (eff. 6/12/ 2012 to 6/12/2013)
                          MXL0417186 (eff. 6/12/2013 to 6/12/2014)
                          MXL0417732 (eff. 6/12/2014 to 6/12/2015)
      Claim No.:          00411196
      Your File No.:      3231-1003

Dear Mr. Moreau:

     This office represents Mt. Hawley Insurance Company in connection with the captioned litigation. Please direct all future correspondence to my attention. We are in receipt of your August 4, 2016 letter to Jack Lewis attaching the Third Amended Complaint ("TAC") in *ABA-Roseville, LLC v. Crane Development Corp.* Your letter seeks Mt. Hawley's approval for Crane Development Corporation ("CDC") and Phillip Crane to retain Klinedinst Attorneys to serve as their independent counsel in the case under California Civil Code section 2860.

     You letter is founded upon the mistaken impression that Mt. Hawley has agreed to defend CDC and Mr. Crane in the captioned action under Mt. Hawley policy no. MGL0176717. In fact, Mt. Hawley has declined to defend or indemnify CDC or Mr. Crane for the *ABA-Roseville* action. Most recently, on April 27, 2016, we responded to CDC and Crane's tender of defense and indemnity for the claims comprising the Second Amended Complaint. Mt. Hawley has also responded to each of CDC's earlier tenders by letters dated April 13, 2015, June 25, 2015 and February 8, 2016. Please let us know if you request copies of those letters. Mt. Hawley reiterates and incorporates by this reference its prior correspondence, reserving all rights.

     We have had the opportunity to review and analyze ABA-Roseville's TAC filed on July 11, 2016 against CDC, Philip Crane and other defendants. Having considered your letter in light of the TAC, the information that has been provided and the language of the insurance contracts, Mt. Hawley advises you of its determination that it owes no contractual obligations of defense or indemnity to CDC or Mr. Crane with respect to the TAC filed in the referenced matter and

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 2

accordingly must decline coverage for CDC and Mr. Crane, and re-affirm its prior declinations of their claim. Because Mt. Hawley owes no duty to defend CDC or Mr. Crane, any request for "independent counsel" under Civil Code section 2860 would also be unwarranted.

Mt. Hawley sets forth pertinent allegations and contract language below, while continuing to reserve all of its rights. We recognize that CDC and Mr. Crane have other insurance under which there is actual or potential coverage, including CDC's own insurance policies with other carriers as well as "additional insured" status under one or more commercial general liability policies issued by insurers for its subcontractors, several of whom are currently defending CDC in this case. Mr. Crane may also wish to consider D&O, E&O, or other available coverage for the more recent misrepresentation and RICO claims asserted against him (alleging certain economic damages). We suggest CDC and Mr. Crane continue to pursue all other alternative insurance coverage and take all appropriate steps to protect their interests in the underlying litigation.

Mt. Hawley bases this letter upon the information it has received to date regarding this matter. To the extent additional facts, information and developments become known to Mt. Hawley, it reserves its right to amend or modify its positions as set forth herein.

## FACTUAL BACKGROUND

This matter arises from litigation entitled *ABA Roseville, LLC v. Crane Development Corp. et al. (and related Cross-Actions)*, San Diego Superior Court case no. 37-2014-00005108-CU-CD-CTL, alleging construction defects in the development and construction of real property and improvements known as Hyatt Place Roseville located at 220 Conference Center Drive, Roseville, California. CDC served as the general contractor for the construction project, which was completed in early 2010.

In or about July 30, 2008 ABA-Roseville and Crane contracted for construction of a hotel on the property operated under the name Hyatt Place Roseville. Under the construction contract, Crane was to serve as the general contractor for the project. Crane contracted with a number of subcontractors, an architect and manufacturers who either worked on, or supplied material or professional services for, the construction project. Work on the hotel was substantially complete by January 26, 2010, the date of Crane's notice of completion and the City of Roseville's Certificate of Occupancy. Hyatt Place Roseville also opened for business in 2010.

After project completion, the hotel suffered leaks and other problems allegedly as a result of poor construction. On or about March 3, 2014, ABA-Roseville filed its Complaint against Crane in the Underlying Action, asserting causes of action for: (1) negligence; (2) breach of contract; (3) breach of express warranties; (4) breach of implied warranties; (5) strict liability; and (6) tortuous interference with prospective economic advantage arising from the allegedly defective conditions located at the hotel as a result of its original construction. In its Complaint,

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 3

ABA-Roseville alleged that Crane failed to comply with laws, ordinances, codes, industry standards, and manufacturer recommendations and installation instructions as required by the construction contract. As a result of Crane's alleged breaches, ABA-Roseville claims the hotel suffered from water intrusion in, at and around windows, the surrounding brick veneer and packaged terminal HVAC units, to ABA-Roseville's damage. ABA-Roseville further alleges that Crane knew or should have known its failure to comply with applicable laws and industry standards would disrupt the use of the property as a hotel and interfered with ABA-Roseville's economic benefit.

ABA-Roseville filed its First Amended Complaint on or about April 29, 2015 identifying additional defective conditions at the hotel. ABA-Roseville's FAC also alleges that Crane violated the Americans with Disabilities Act of 1990 while performing its work on items associated with parking, exterior routes of travel, curb and pedestrian ramps, pool areas, common areas, exterior and interior stairways, elevator accessibility, doorways, light fixtures and restrooms. ABA-Roseville alleges to have sustained damages in excess of $16 million representing the cost of repairing the defects and the lost revenue incurred while the repairs were undertaken.

ABA-Roseville filed its Second Amended Complaint ("SAC") on March 15, 2016 adding Philip Crane as defendant and asserting nine causes of action as follows: (1) negligence; (2) breach of contract; (3) breach of express warranty; (4) breach of implied warranties; (5) strict liability; (6) tortious interference with prospective economic advantage; (7) recovery on performance bond; (8) negligent misrepresentation; and (9) negligent breach of fiduciary duty. The core allegations against CDC remain substantially intact. Philip Crane and CDC are named as a defendant in ABA-Roseville's newly added cause of action for negligent misrepresentation. In addition, CDC is named in ABA-Roseville's newly added cause of action for breach of fiduciary duty.

ABA-Roseville filed its TAC on July 11, 2016 asserting causes of action for: (1) negligence; (2) breach of contract; (3) breach of express warranty; (4) breach of implied warranties; (5) strict liability; (6) tortious interference with prospective economic advantage; (7) recovery on performance bond; (8) fraud – intentional misrepresentation; (9) negligent misrepresentation; (10) negligent breach of fiduciary duty; (11) fraud – concealment; (12) violation of 18 U.S.C. §1962(c) – RICO enterprise; and (13) violation of 18 U.S.C. §1962(d) – RICO conspiracy.

Plaintiff's newly added eighth cause of action for intentional misrepresentation against CDC and Philip Crane expands on the allegations of its negligent misrepresentation count in its SAC. The TAC's eighth cause of action alleges that Crane committed certain acts of fraud while performing CDC's contract with ABA-Roseville including in its submission of periodic construction draw requests and supporting documentation. ABA-Roseville generally claims that several construction draw requests authored and certified by Crane and CDC intentionally

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 4

overstated dollar values owed for work performed under subcontracts or approved change orders, resulting in over $450,000 being paid to CDC above what was actually owed under the construction contract. (TAC, ¶¶83-94, 131-133.)  Specifically, plaintiff claims that subcontractor Fitch Plastering was due $37,116 for Construction Draw No. 9 but Crane and CDC billed ABA-Roseville $73,278 for the work, keeping the difference of $36,162.  (TAC, ¶¶91-101.)   Similar claims are made in connection with Fitch Plastering's payment for work referenced in Construction Draw No. 10 ($11,808 owed but $46,908 paid) (TAC, ¶¶102-105), Fitch Plastering's payment for work referenced in Construction Draw No. 11 ($40,491 owed but $62,991 paid) (TAC, ¶¶106-110), LB Construction's payment for work referenced in Construction Draw No. 15 ($5,819.59 owed but $37,319.59 paid) (TAC, ¶¶111-116), J.P. Rodriguez, Inc.'s payment for work referenced in Construction Draw No. 14 ($108,000 owed but $166,500 paid) (TAC, ¶¶117-122), J.P. Rodriguez, Inc.'s payment for work referenced in Construction Draw No. 15 ($58,500 owed but $91,530 paid) (TAC, ¶¶123-127), and American Insulation's payment for work referenced in Construction Draw No. 11 ($9,309.06 owed but $22,809.06 paid) (TAC, ¶¶128-130).

ABA-Roseville's ninth count re-asserts its claim for negligent misrepresentation and is based upon the same misconduct by CDC and Philip Crane alleged in its intentional misrepresentation cause of action.  Here, plaintiff alleges defendants negligently breached their duty of care owed to ABA-Roseville by preparing and submitting construction draw requests and misstating the amounts due CDC subcontractors and suppliers. (TAC, ¶¶134-136.)  ABA-Roseville also claims that defendants' falsely represented the extent to which CDC subcontractors had worked on the project. (TAC, ¶137.)  Here too, plaintiff claims to have been ignorant of the true facts and to have relied on defendants' representations to its damage.  (TAC, ¶¶138, 139.)

The TAC also adds an eleventh cause of action for the fraud of concealment against CDC and Philip Crane.  In that cause of action, ABA-Roseville alleges that CDC and Crane failed to disclose material facts related to the construction project which allowed defendants to "create a pool of funds for their own benefit" (TAC at ¶155).  Plaintiff further alleges that defendants intentionally failed to account to plaintiff and falsified draw requests, lien releases, invoices and other documents for defendants' gain and to ABA-Roseville's damage.  (TAC, ¶¶155-160.)

Next, ABA-Roseville's TAC adds a twelfth cause of action against Philip Crane for unlawful RICO enterprise in violation of 18 U.S.C. §1962(c).  Here, plaintiff alleges that Mr. Crane employed instruments of interstate commerce to engage in a related, systematic and continuous practices of CDC (the enterprise) that amounted to a fraudulent scheme on CDC's unknowing clients including ABA-Roseville. (TAC, ¶¶161-168.)  As a result, ABA-Roseville claims to have been injured in the form of lost money and profits entitling it to treble damages. (TAC, ¶¶169-171.)  ABA-Roseville's TAC also adds a thirteenth cause of action against Philip Crane for unlawful RICO conspiracy in violation of 18 U.S.C. §1962(d).  In this count, plaintiff alleges that Crane conspired to conduct CDC through the described racketeering activity and

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 5

agreed to commit those acts to further the alleged fraudulent scheme. (TAC, ¶¶172-173.)  ABA-Roseville claims to have lost money and profits and, as a result, seeks treble damages and attorneys' fees.  (TAC, ¶¶174-175.)

ABA-Roseville's TAC seeks damages, costs of suit, expert and investigative fees and costs, disgorgement, punitive or exemplary damages, pre- and post-judgment interest, attorneys' fees, costs and other relief the court may order.  (TAC at pp. 39-40.)

## THE MT. HAWLEY INSURANCE CONTRACTS

Mt. Hawley and Crane Development Corporation entered into a series of insurance contracts for each of the annual policy periods from June 12, 2012 to June 12, 2015.  The three Commercial General Liability ("CGL") policies were as follows:  (a) policy MGL0176717 (effective June 12, 2012 to June 12, 2013); (b) policy MGL00178266 (effective June 12, 2013 to June 12, 2014); and (c) policy MGL00180791 (effective June 12, 2014 to June 12, 2015) (collectively "CGL policies").  The Excess Liability policies were: (d) policy no. MXL0370564 (effective June 12, 2012 to June 12, 2013); (e) policy no. MXL0417186 (effective June 12, 2013 to June 12, 2014); and (f) policy no. MXL0417732 (effective June 12, 2014 to June 12, 2015) (collectively "Excess Liability policies").

A.     The CGL Policies.

The Bodily Injury and Property Damage Liability coverage parts of the CGL policies have a $1 million per occurrence limit of liability for claims falling within its terms and conditions, subject to a $2 million aggregate limit.  The Mt. Hawley CGL policies include three coverage sections: (1) Bodily Injury and Property Damage Liability; (2) Personal and Advertising Injury Liability; and (3) Medical Payments.  We address below why no coverage is available under the Bodily Injury and Property Damage Liability coverage part of the CGL policies for the construction defect and other claims raised by the *ABA-Roseville* case.  Please advise if you would like a detailed explanation of the reasons why no potential for insurance coverage arises for the *ABA-Roseville* Action under the Personal and Advertising Injury Liability, and Medical Payments coverage parts of the Mt. Hawley CGL policies.

The relevant Insuring Agreement of each CGL policy states in part:

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for ... "property damage" to which this insurance does not apply...

> b.  This insurance applies to ... "property damage" only if: (1) The..."property

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 6

damage" is caused by an "occurrence" that takes place in the "coverage territory"; (2) The... "property damage" occurs during the policy period; and (3) Prior to the policy period, no insured ... and no employee authorized by you to receive notice of an "occurrence" or claim, knew that the ... "property damage" had occurred.

Section V – Definitions of each CGL policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section V defines "property damage" to include: "a. Physical injury to tangible property, including resulting loss of use of that property...; or b. Loss of use of tangible property that is not physically injured."

Paragraph 4 of Section IV of each CGL policy, as modified by an Endorsement captioned "Amendment of Other Insurance – Excess Provision (Construction Contracts)" reflects CDC's agreement with Mt. Hawley that its "additional insured" coverage applies on a primary basis and that Mt. Hawley has no contractual duty to defend any matter if additional insured coverage is available to CDC (as it is here). The endorsement provides:

(c) This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis that is available to you as an additional insured or contractual indemnitee under a policy issued to a subcontractor. You are required to give notice of claim to all "potential insurers" within 30 days of giving notice of claim to us.

We have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend...

\* \* \* \*

"Potential Insurers" means all insurance companies who may be obligated to defend the insured as either a named insured or an additional insured. "Potential Insurers" includes the insurers of all subcontractors who were contractually obligated to name the insured as an additional insured on their own insurance policy(ies).

Each Mt. Hawley CGL policy includes a Subcontractor Endorsement specifying certain conditions to coverage in circumstances (such as this) where CDC has retained one or more subcontractors. The Subcontractor Endorsement attached to CGL policies MGL0176717 (eff. 6/12/2012 to 6/12/2013) and MGL0178266 (eff. 6/12/2013 to 6/12/2014) provide in part:

1. The Named Insured will obtain Certificates of Insurance for Commercial General Liability coverage with: ... b. Limits at least equal to or greater than $1,000,000 each "occurrence" for ... "property damage"... from all "subcontractors" prior to commencement of any work performed for any insured.

2. The Named Insured will obtain agreements, in writing, from all

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 7

"subcontractors" pursuant to which the "subcontractors" will be required to defend, indemnify and hold harmless the Named Insured, and any other insured under the policy for whom the "subcontractor" is working, for any claim or "suit" for "property damage"… arising out of the work performed by the "subcontractor."

3. The Named Insured… will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(ies)…. For purposes of this endorsement only, "subcontractor" or "subcontractors" means any person or entity who is not an employee of an insured and does work or performs services for or on behalf of an insured.

Mt. Hawley policy MGL0180791 (eff. 6/12/2014 to 6/12/2015) adds similar conditions through a Subcontractor Endorsement which provides in part:

For any…"property damage"… arising directly or indirectly from work by a "contractor," each and every of the following conditions must be satisfied: …

2. Written agreements are obtained from each and every "contractor" which hold harmless and indemnify the insured(s) against whom the claim is made for all injuries, damages, claims, and suits arising directly or indirectly from the "contractor's work" (including the work performed by the "contractor's" subcontractors or sub-subcontractors)…

3. The written agreements required in condition 2 must also require that the "contractor" will obtain additional insured coverage under the "contractor's" primary commercial general liability policy for each insured(s) against whom the claim is made… Such agreements must require limits of additional insured coverage equal to or greater than the limits of this policy. Such agreements must state that the additional insured coverage is to be primary and noncontributory.

4. The "contractor's" primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for the… "property damage"… and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy…

Each Mt. Hawley CGL policy includes a Continuous or Progressive Injury and Damage Exclusion which provides in part:

This insurance does not apply to any damages because of or related to … "property damage,"…:

a. Which first existed, or are alleged to have first existed, prior to the inception date of this Policy; or

b. Which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged… "property damage,"

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 8

… continues during this policy period; or

c.  Which were caused, or are alleged to have been caused, by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this Policy.

Each Mt. Hawley CGL policy includes a Breach of Contract Exclusion providing:

This insurance does not apply, nor do we have a duty to defend any claim or "suit" for… "property damage," … arising directly or indirectly out of the following:

a. Breach of express or implied contract;

b. Breach of express or implied warranty;

c.  Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

d. Libel, slander or defamation arising out of or within the contractual relationship.

Each Mt. Hawley CGL policy includes a Mold, Mildew and Fungus Exclusion providing in part:

In consideration of the premium for which this policy is issued, this insurance does not apply to, and we are not obligated to defend, any loss, demand, claim, cost, expense, "suit," … "property damage," …or other proceeding that in any way, in whole or in part, arises out of, relates to, or results from mold, mildew or fungus…

This exclusion applies regardless of whether any other cause, event, material, product or condition, including but not limited to water damage or water intrusion, contributed concurrently or in any sequence to such loss, demand, claim, cost, expense, 'suit,'… 'property damage,' … or liability…

Each Mt. Hawley CGL policy includes an Exclusion – Contractors – Professional Liability which provides in part:

This insurance does not apply to … 'property damage' … arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

…

**MORISON & PROUGH, LLP**

b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform..."

Each Mt. Hawley CGL policy also includes the following additional exclusions providing in whole or part as follows:

This insurance does not apply to:

**a.   Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.   Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

. . .

**j.   Damage To Property**

"Property damage" to:

. . .

(5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 10

       1.      **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

   B.     <u>The Excess Liability Policies</u>

Mt. Hawley Excess Liability policy MXL0370564 (effective June 12, 2012 to June 12, 2013) identifies Mt. Hawley CGL policy MGL0176717 on its Schedule of Underlying Insurance. A Change Endorsement increased the Limits of Liability of policy MXL0370564 to $10 million each occurrence and in the aggregate in excess of available limits of liability of underlying insurance. Mt. Hawley Excess Liability policy MXL0417186 (effective June 12, 2013 to June 12, 2014) identifies Mt. Hawley CGL policy MGL0178266 on its Schedule of Underlying Insurance. The Limits of Liability of policy MXL0417186 is $10 million each occurrence and in the aggregate in excess of the available limits of liability of underlying insurance. Mt. Hawley Excess Liability policy MXL0417732 (effective June 12, 2014 to June 12, 2015) identifies Mt. Hawley CGL policy MGL0180791 and a National Union Fire Insurance Company Excess Liability policy having a $10 million Limit of Liability. Policy MXL0417732 has a $10 million Limit of Liability each occurrence and in the aggregate in excess of the available limits of liability of underlying insurance.

The Insuring Agreements of the Mt. Hawley Excess Liability policies provide in part:

Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's ultimate net loss if such loss results from an occurrence insured by underlying insurance. However, the insurance afforded by this policy shall apply: (a) only in excess of the underlying insurance; (b) only after the underlying insurance has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period… If the underlying Insurance does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.

This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.

Section I.B. of the Mt. Hawley Excess Liability policies, entitled Defense and Expense of Claims and Suits, provide in part:

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 11

> We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured. However, we shall have the right and opportunity to be associated with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy.

The Mt. Hawley Excess Liability policies define "ultimate net loss" in part to mean: "all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage." The Excess Policies define "underlying insurance" to mean: "the policy or policies of insurance in the Schedule of Underlying Insurance."

Section IV. K of the Excess Liability policies address Other Insurance and provide:

> If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance.

## DISCUSSION

Based on the TAC allegations, the information provided to Mt. Hawley to date and the language of the CGL policies and Excess Liability policies, Mt. Hawley concludes that it has no duty to defend or indemnify CDC or Philip Crane for the claims asserted against them in the *ABA-Roseville* action. The construction defect claims against CDC that are re-alleged in the TAC are not covered for the same reasons Mt. Hawley previously advised they were not covered in previous iterations of the underlying complaints, including the policy exclusions for continuous or progressive injury or damage, the breach of contract exclusion, the business risk exclusions, and the timing requirements of the coverage grant. All other policy provisions and legal defenses also continue to be reserved.

With regard to the new claims asserted against CDC and against Mr. Crane in the TAC, for the first time, those are claims are primarily for economic damages / disgorgement occasioned by certain alleged business misconduct of the defendants (including alleged overbilling and misrepresentations), which involve neither "property damage" nor an "occurrence" within the potential coverage of the insurance contracts. The TAC also seeks punitive or exemplary damages, and statutory treble damages under the RICO statute, which are uninsurable as a matter of California law. Accordingly, those new claims provide no basis for changing Mt. Hawley's ultimate coverage determination as regards CDC or Mr. Crane, and likewise provide no basis for assuming any defense obligation with regard to the claims being asserted against them.

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 12

Without waiver of any other rights not mentioned herein, which are all reserved, Mt. Hawley identifies the following insurance contract provisions and coverage issues applicable to the damages sought in the *ABA-Roseville* action.

As discussed, Crane and CDC are named as defendants in ABA-Roseville's eighth, ninth and eleventh causes of action for intentional and negligent misrepresentation, and fraud un the concealment, respectively. ABA-Roseville's twelfth cause of action for unlawful RICO enterprise and thirteenth cause of action for unlawful RICO conspiracy are asserted against Philip Crane alone. These causes of action, however, do not seek to impose liability upon Crane or CDC because of "property damage" caused by an "occurrence" during the policy period as required by the CGL policies. Rather, plaintiff ABA-Roseville asserts that, through artifices of fraud and other intentional wrongdoing, Crane and CDC deceived plaintiff into paying inflated construction draw requests that have unjustly enriched them. No potential for coverage arises from these causes of action.

ABA-Roseville's newly added causes of action do not allege a claim for "property damage" as required by the insuring agreement of the CGL policies. The CGL policies define "property damage" to include: "a. Physical injury to tangible property, including resulting loss of use of that property...; or b. Loss of use of tangible property that is not physically injured." ABA-Crane's intentional and negligent misrepresentation, fraud, breach of fiduciary duty and RICO causes of action, however, do not seek to impose liability against an insured for "property damage" as defined. Rather, each seeks to impose liability against defendants for either their misrepresentations and other fraudulent misconduct, or for CDC's alleged breach of fiduciary duty owed to ABA-Roseville. As such, they do not give rise to a potential that the insuring agreement of the CGL policies would be triggered.

Next, ABA-Crane's causes of action for intentional and negligent misrepresentation, breach of fiduciary duty, fraud in the concealment, and unlawful RICO enterprise and conspiracy, allege only intentional misconduct which cannot satisfy the requirements in each CGL policy that liability for damages arise from property damage caused by an "occurrence." The CGL policies define "occurrence" to mean "an accident, including continuous or repeated exposure to the same general harmful conditions." The California Supreme Court has defined "accident" "[i]n the context of liability insurance... [as] an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." *Delgado v. Interinsurance Exch. of the Auto. Club of S. Calif.*, 47 Cal. 4th at 309 (citations omitted). "This common law construction of the term "accident" becomes part of the policy..." *Id.* "California courts interpreting 'occurrence'" — and, by extension, "accident" — "have focused exclusively on the insured's intent to perform the act which gives rise to liability, not on the insured's state of mind. If the claimant's injuries did not result from an 'accident,' it does not matter whether the insured expected or intended his conduct to cause any harm." *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 810 (1994); *see also Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583, 598 (1998); *Uhlrich v. State Farm Fire & Cas. Co.*, 109 Cal.App.4th 598, 610 (2003). "[A]n injury-

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 13

producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor. [Citations.]" *Delgado v. Interinsurance Exch. of the Auto. Club of S. Calif.*, 47 Cal.4th at 311-12; *see also Dyer v. Northbrook Property & Casualty Insurance Company*, 210 Cal.App.3d 1540, 1547, 259 Cal.Rptr. 298 (1989) ("An intentional act is not an 'accident'"). # Here, ABA-Roseville claims that Crane and CDC intentionally submitted for payment construction draw request and documents which overstated sums incurred by subcontractors causing ABA-Roseville to overpay each request. Clearly Crane and CDC's submission of construction draw requests were deliberate acts intending to induce ABA-Roseville's reliance and payment. As a result, all acts committed to cause ABA-Roseville to pay such draw requests were purposeful (not an "accident") and cannot satisfy the definition of "occurrence" in the CGL policies. This conclusion remains the same regardless of whether defendants intended to induce ABA-Roseville's reliance or alleged overpayment.

Further, plaintiff's damages claims arising from its intentional and negligent misrepresentation, breach of fiduciary, fraud in the concealment, and for violation of the federal RICO statute are in the form of restitution and disgorgement of profits or ill-gotten gains, and seek to impose punitive or exemplary damages, and statutory penalties for which insurance is not available under California law and public policy. *Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992); *see also* Insurance Code section 533. To the extent that the TAC in the *ABA-Roseville* action seeks to impose liability for damages arising from construction defects allegedly caused by CDC arising from its role as general contractor on the Hyatt Place Roseville project, several policy exclusions also operate to bar coverage under the CGL policies.

The Continuous or Progressive Injury or Damage exclusion in the CGL policies is broad and unambiguous. Like many similar exclusions drafted by insurers in response to the second *Montrose* decision in 1995 to preclude coverage in situations of continuous and progressive damage, the Mt. Hawley exclusion removes coverage of, and any duty to defend claims for, property damage which existed before inception of the policy or which was in the process of taking place prior to each policy's inception. The exclusionary endorsement in the CGL insurance contracts entered into between CDC and Mt. Hawley also contain an additional provision, however, extending the exclusion to all claims related to property damage caused or allegedly caused "by any defect, deficiency, inadequacy or condition which first existed prior to the inception of the policy." This Mt. Hawley policy exclusion bars coverage, in a case such as this, where the allegedly faulty construction work (the defect, inadequacy or condition for which the insured is sought to be held liable), necessarily existed no later than the date construction on the project was complete in or about January 2010—and thus, well before the earliest Mt. Hawley CGL policy commenced on June 12, 2012.

The claims and causes of action raised by the *ABA-Roseville* action are also excluded under the CGL policies by operation of the Breach of Contract Exclusion. The Breach of Contract Exclusion provides that the insurance contracts do not apply to any suit for "'property damage' arising directly or indirectly out of … a. Breach of express or implied contract; b. Breach of express or implied warranty; [or] c. Fraud or misrepresentation regarding the…

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 14

performance of a contract." To the extent that the Underlying Action seeks damages for "property damage" caused by an "occurrence" taking place during any Mt. Hawley CGL policy, it is based upon and arises out of CDC's alleged breach of the construction contract, and violations of express and implied warranties created by the ABA-Roseville/Crane construction contract. *Acceptance Insurance Co. v Syufy Enterprises*, 69 Cal.App.4th 321, 328 (1999) (the phrase "arising out of" requires only a minimal causal nexus between the claimed loss and the excluded risk in order for an exclusion to apply).

The Mt. Hawley policies are also not implicated by the underlying *ABA-Roseville* action by operation of the Other Insurance provisions of the CGL policies. Each CGL policy includes an Amendment of Other Insurance – Excess Provision (Construction Contracts) endorsement rendering them "excess over any other insurance … available to [Crane] as an additional insured or contractual indemnitee under a policy issued to a subcontractor…"[1] CDC is being fully defended in the *ABA-Roseville* action by several insurers for its subcontractors on the project. To the extent other insurance is implicated in the *ABA-Roseville* Action, the CGL and Excess Liability policies are excess over all other insurance available to CDC from any source, and other insurance available to ABA-Roseville from any source. CDC and Mt. Hawley expressly agreed in their CGL insurance contracts that where additional insured carriers owe CDC defense duties, as here, "We have no duty under Coverage A or B to defend any claim or 'suit' that any other insurer has a duty to defend..."

The Mt. Hawley Excess Liability policies follow the form of scheduled underlying insurance, including the CGL policies, except where the Excess Policies expressly provide otherwise. The Excess Liability policies are thus subject to all of conditions, agreements, exclusions, and limitations of the Mt. Hawley CGL policies (including endorsements) provided no contrary provisions are present in the Excess Liability policies. Here, the Excess Liability policies follow form to the exclusions and limitations in the CGL policies including the continuous or progressive injury or damage exclusion, the breach of contract exclusion, the business risk exclusions, and the timing requirements of the coverage grant. As a result, those policy exclusions and limitations apply to bar coverage under the Excess Liability policies to the same extent they eliminate coverage under the CGL policies. In addition, no limits of liability of any underlying insurance appears to have been exhausted by virtue of payment on a covered claim. For these reasons, there is likewise no duty to defend or indemnify any insured for the *ABA-Roseville* action under the Mt. Hawley Excess Liability policies.

---

[1] Section IV.K of each Mt. Hawley Excess Liability policy addresses Other Insurance and provides: "If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy… the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance." To the extent that the primary insurance is not exhausted by payment of the available limits of liability as a result of a covered claim, the insuring agreement in the Mt. Hawley Excess Liability policies is not satisfied. Further, under the express language of its Excess Liability policies Mt. Hawley is under no obligation to assume charge of, or to participate in, the settlement or defense of any claim made, or suit brought against an insured.

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 15

California's *Cumis* statute, Civil Code section 2860, provides in relevant part that "(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises … the insurer shall provide independent counsel to represent the insured …; (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage." For the reasons outlined above, no duty to defend CDC or Crane arises under the Mt. Hawley CGL or Excess Liability policies from the *ABA-Roseville* action. Because no defense duty exists under the Mt. Hawley policies, any question of independent counsel is not implicated. Mt. Hawley notes, however, that CDC and Crane are currently receiving a defense of the underlying action from other insurers. For this reason, Mt. Hawley suggests that CDC and Crane continue to take all appropriate steps to protect their interests in the underlying litigation including assessing whether the obligations of any defending insurer may create an obligation to provide independent *Cumis* counsel.

## FURTHER RESERVATION OF RIGHTS

In light of the allegations and facts known at this time, other provisions of the Mt. Hawley insurance contracts may also serve to bar coverage for some or all of the claims asserted in the *ABA-Roseville* action. Certain provisions are set forth below.

1.    Coverage A of each Mt. Hawley policy extends only to claims for "bodily injury" or "property damage" as those terms are defined in the policies. To the extent any claims include economic injuries, statutory penalties, and other components constituting neither "bodily injury" nor "property damage", Mt. Hawley reserves the right to deny coverage for any alleged injury or damage not satisfying the policy definition of "bodily injury" or "property damage." Likewise, Coverage A extends only to losses caused by an "occurrence," defined to require accidental conduct, taking place during the policy period. To the extent any damages are claimed for conduct that was purposeful, the "occurrence" definition would not be satisfied. To the extent that damages are claimed to have taken place outside the policy period, the condition precedent to coverage requiring that damages take place during the policy period would not be satisfied.

2.    Coverage B extends only to claims for "personal and advertising injury," as that term is defined in the policies, resulting from an enumerated offense committed during a policy period of a Mt. Hawley CGL policy. The claims raised by the TAC filed in the underlying *ABA-Roseville* action do not fall within the offenses contained within that personal and advertising injury coverage provision. Mt. Hawley reserves the right to deny coverage under Coverage B of the policies.

3.    The Mt. Hawley policies apply only to covered claims for "damages" as set forth in the coverage grants. To the extent any claims against Crane or CDC in the *ABA-Roseville* action include requests for disgorgement of profits or ill-gotten gains, punitive or exemplary damages, statutory damages, penalties and fees, none of which would be a claim for "damages."

**MORISON & PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 16

Mt. Hawley denies coverage with respect to any such claims in this case, including but not limited to any claim for disgorgement, penalties, and fees, in accordance with *Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992).

4.    Punitive damages, exemplary damages and statutory penalties are not covered by the Mt. Hawley policies and are further uninsurable as a matter of California law and public policy. *Peterson v. Superior Court*, 31 Cal.3d 147 (1982).  To the extent any claims against Crane or CDC in the *ABA-Roseville* Action include requests makes such claims, Mt. Hawley denies coverage.  Public policy also bars coverage for willful acts per California Insurance Code section 533.  To the extent any judgment or settlement reflects sums for which those public policy bars to coverage apply, Mt. Hawley also reserves its right to contest coverage on those bases.

5.    The Mt. Hawley policies afford no coverage for claims for attorneys' fees incurred in prosecuting claims in the *ABA-Roseville* Action.  Those are not covered damages, neither "bodily injury" nor "property damage."  They also arise out of the contractual relationship and would fall within the Breach of Contract exclusions (discussed above) in any event.  To the extent any judgment or settlement reflects sums for which those bars to coverage apply, Mt. Hawley reserves its right to contest coverage on those bases.

6.    To the extent that Crane or CDC sustains liability arising from any claim, suit or property damage that "in any way, in whole or in part, arises out of, relates to, or results from mold, mildew or fungus," the Mold, Mildew and Fungus Exclusion endorsement in the CGL policies would remove coverage for all such liability.  Mt. Hawley reserves the right to deny coverage based on the CGL policies' Mold, Mildew and Fungus Exclusion endorsement to the extent Crane or CDC's liability is based upon property damage arising from or related to mold, mildew or fungus.

7.    To the extent that Crane or CDC sustains liability arising from any claim, suit or property damage that "property damage … arising out of the rendering of or failure to render any professional services" by CDC or on CDC's behalf, the Exclusion – Contractors – Professional Liability endorsement in the CGL policies would remove coverage for all such liability.  Mt. Hawley reserves the right to deny coverage based on the CGL policies' Exclusion – Contractors – Professional Liability endorsement to the extent Crane or CDC's liability is based upon property damage arising out of the rendering of or failure to render any professional services by CDC or on CDC's behalf.

8.    Mt. Hawley recognizes that the underlying *ABA-Roseville* action is ongoing, and Mt. Hawley anticipates and expects that further information and developments may be made known to it that may affect its understanding of this case.  Mt. Hawley reserves the right to raise additional issues, and to alter, modify or supplement this reservation of rights, whether based on newly discovered facts or otherwise.  Nothing in this letter, Mt. Hawley's investigation or

**MORISON &' PROUGH, LLP**

Arthur S. Moreau, Esq.
September 14, 2016
Page 17

handling of this case, or its further communications, should be construed as a waiver of any of its rights under the insurance contract or applicable law, all of which rights are expressly reserved.

<u>**CONCLUSION**</u>

Based on the information currently available to it, Mt. Hawley has concluded it has no duty to defend or indemnify Philip Crane or CDC with respect to the *ABA-Roseville* action under the Mt. Hawley CGL policies or Excess Liability policies.

The foregoing discussion is not intended to be necessarily exhaustive or complete. It is based on an analysis of this matter in light of the information available to date. Mt. Hawley reserves the right to assert additional grounds for denial of coverage if and when such assertion is justified by the underlying facts and applicable law, whether based on new developments or otherwise, and whether or not based on contract language or grounds set forth in this letter. If you are aware of any facts or legal theories that, in your opinion, are relevant to our determination of coverage in this case, please bring such information to our attention.

If you believe that our determination of coverage herein is in error, you may request review of this matter by the California Department of Insurance at the following address:

California Department of Insurance
Claims Services Bureau
11th Floor, 300 South Spring Street
Los Angeles, CA 90013
Telephone: 1-800-927-4357

Please feel free to contact the undersigned, should you have any questions, comments, or additional information or documentation bearing on the matters addressed in this letter.

Very truly yours,

Michael D. Prough