1

2

3

4

5

6

7

8                                   UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MT. HAWLEY INSURANCE
    COMPANY, an Illinois corporation          No.  2:16-cv-0892-JAM-EFB
12  authorized to transact business in
    California,
13                      Plaintiff,            FINDINGS AND RECOMMENDATIONS

14         v.

15  CRANE DEVELOPMENT
    CORPORATION, a California corporation;
16  ABA-ROSEVILLE, LLC, a Delaware
    limited liability company, and DOES 1-25,
17
                        Defendants.
18

19

20         This case was before the court on October 26, 2016, for hearing on plaintiff Mt. Hawley

21  Insurance Company's ("Mt. Hawley") motion for default judgment (ECF No. 11) and defendant

22  Crane Development Corporation's ("Crane") motion to set aside the clerk's entry of default (ECF

23  No. 16).  Attorney Dean Burnick appeared on behalf of plaintiff; attorney James Han appeared on

24  behalf of Crane.  For the reasons stated below, it is recommended that defendant's motion to set

25  aside default be denied and plaintiff's motion for default judgment be granted.

26  /////

27  /////

28
                                              1

I.      Facts and Procedural History

Plaintiff is an insurance company organized under Illinois Law.  It filed this declaratory relief action against defendants Crane and ABA-Roseville LLC ("ABA"), pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a determination that it does not have a duty to defend or indemnify the defendants for liability they may sustain in a state court case entitled *ABA Roseville, LLC v. Crane Development Corp*., San Diego County Superior Court Case No. 37-2014-00005108-CU-CD-CTL ("underlying case").[1]  ECF No. 1.

The complaint alleges that ABA and Crane contracted for construction of a hotel operated under the name Hyatt Place Roseville.  ECF No 1 ¶ 26.  Crane was to serve as the general contractor and it contracted with a number of subcontractors, manufacturers, and an architect who either worked on, or supplied material or professional services for, the project.  *Id*.  Work on the project was substantially completed in January 2010, and the hotel opened for business later that year.  *Id*.  However, after completion of the project, the hotel suffered leaks and other problems allegedly as a result of poor construction.  *Id*. ¶ 27.  These problems were known to ABA prior to June 12, 2012.  *Id*.

The complaint further alleges that Mt. Hawley and Crane entered into a series of separate insurance contracts, each having a one-year term and running consecutively from June 12, 2012 to June 12, 2015.  ECF No 1 ¶ 8.  The contracts included three Commercial General Liability ("CGL") policies and three Excess Liability policies; one CGL and one Excess Liability policy for each one-year term.  *Id*.  The CGL policies have a $1 million per occurrence limit of liability for covered claims, subject to a $2 million aggregate limit.  *Id*. ¶ 10; *see* ECF No. 1-1 at 3; ECF No. 1-2 at 3; ECF No. 1-3 at 3.  Each also includes a Continuous or Progressive Injury and Damage Exclusion, which provides that the policy does not provide coverage for property damage:

/////

---

[1]  On October 3, 2016, the court approved plaintiff and defendant ABA's stipulation to dismiss ABA from this action without prejudice.  ECF No. 19.  Accordingly, this action now proceeds only against defendant Crane.

2

a. Which first existed, or are alleged to have first existed, prior to the inception date of this Policy; or

b. Which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged . . ."property damage," . . . continues during this policy period; or

c. Which were caused, or are alleged to have been caused, by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this Policy.

ECF No. 1-1 at 54; ECF No. 1-2 at ; ECF No. 1-3.

Each of the corresponding Excess Liability policies provided additional coverage for loss resulting from an occurrence insured by underlying insurance, but "(a) only in excess of the underlying insurance; (b) only after the underlying insurance has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period."  ECF No. 1-4 at 8; ECF No. 1-5 at 8; ECF No. 1-6 at 8.  The terms of the policies further state that "[if] the underlying insurance does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss."  *Id.*  Significantly, the Excess Liability policies also provide that they are "subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects.  This includes changes by endorsement."  *Id.*

In March 2014, ABA filed suit against Crane in state court, asserting claims for (1) negligence; (2) breach of contract; (3) breach of express warranties; (4) breach of implied warranties; (5) strict liability; (6) tortious interference with prospective advantage; (7) recovery on performance bond; (8) negligent misrepresentation; and (9) negligent breach of fiduciary duty.  *Id.* ¶¶ 28-31.  These claims, with the exception of ABA's negligent misrepresentation and breach of fiduciary duty claims, are based on defective construction of the hotel.  *Id.*  In its negligent misrepresentation claim, ABA alleges that Crane submitted requests for draws (i.e., payments for phases of the construction) that overstated the dollar amount owed for work performed under subcontracts or approved change orders, which resulted in substantial overpayment to Crane.  *Id.* ¶ 32.  In its ninth claim, ABA alleges that Crane owed it a fiduciary duty, which it breached by: altering invoices and/or lien releases of subcontractors to state incorrect amounts; submitting

1    incorrect invoices for payment; submitting construction draw requests seeking inflated sums;

2    accepting ABA's payment of inflated construction draw request amounts; keeping surplus funds

3    generated by submitting inflated construction draw requests; and failing to perform proper

4    accounting.[2] *Id.* ¶ 33.

5            After the underlying case was commenced, Crane submitted multiple requests to Mt.

6    Hawley for it to defend and indemnify it under the CGL and Excess Liability policies.  *Id.* ¶ 38,

7    41, 45, 47.  Mt. Hawley denied the requests, advising Crane that the policies did not afford

8    coverage for the allegations in the underlying case.  *Id.* ¶¶ 39, 42, 47, 48.

9            Mt. Hawley filed this action on April 28, 2016, seeking a declaratory judgment that it does

10   not have a duty to defend or indemnify Crane for liability Crane may sustain in the underlying

11   case.  ECF No. 1.  Plaintiff filed a certificate of service indicating that it served Crane with a copy

12   of the summons and complaint on May 26, 2016.  ECF No. 6.  Crane failed to timely file an

13   answer, and plaintiff requested Crane's default be entered.  ECF No. 7.  Crane's default was

14   entered on June 28, 2016 (ECF No. 10), and plaintiff moved for default judgment on August 29,

15   2016 (ECF No. 11).  Crane thereafter appeared in this action on September 12, 2016, and moved

16   to set aside the clerk's entry of default.  ECF No. 16.

17   II.    <u>Motion to Set Aside Default</u>

18           Crane moves to set aside the entry of its default, arguing that its failure to timely file an

19   answer was due to excusable neglect.  Crane also argues that it has a meritorious defense and that

20   plaintiff will not suffer prejudice if the default is set aside.  ECF No. 16 at 4-7.  Following oral

21   argument in which the court indicated an inclination toward granting Crane's motion, the matter

22   was submitted.  After further consideration of the moving papers and the arguments of the parties,

23   the court finds that setting aside Crane's default is not appropriate in this case.

24           Under Rule 55(a), the court must enter default against a party who has "failed to plead or

25   otherwise defend."  The court also has the power to set aside the entry of default "for good

26   cause."  Fed. R. Civ. P. 55(c).  The United States Court of Appeals for the Ninth Circuit treats the

27   _____

28           [2] The underlying case also involves a cross-complaint filed by Crane against 18
     subcontractors, alleging various claims related to construction defects.  *Id.* ¶¶ 34, 35.

4

1   standard for good cause to set aside an entry of default under Rule 55(c) the same as the

2   excusable neglect standard for relief from judgment under Rule 60(b) (1).  *TCI Group Life Ins.*

3   *Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001); *Franchise Holding II, LLC v. Huntington*

4   *Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).  Although there is considerable

5   discretion under the rule, the Ninth Circuit has admonished generally that Rule 60(b) is "remedial

6   in nature and . . . must be liberally applied."  *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per

7   curiam ).

8         Three factors derived from the "good cause" standard under Rule 55(c) govern the lifting

9   of entries of default as well as the vacating of a default judgment.  *See TCI Group Life Ins. Plan*

10   *v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v.*

11   *Egelhoff*, 532 U.S. 141 (2001).  "Those factors are: whether the defendant's culpable conduct led

12   to the default; whether the defendant has a meritorious defense; and whether reopening the

13   default judgment would prejudice the plaintiff."  *Id.*  "[T]his tripartite test is 'disjunctive,'

14   meaning that the district court is free to deny the motion if any of these three factors is shown to

15   exist."  *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108-09 (9th

16   Cir. 2000).  It is a "well-established proposition that a finding of culpability on the part of a

17   defaulting defendant is sufficient to justify the district court's exercise of its discretion to deny

18   relief from a default judgment."  *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108,

19   1111 (9th Cir. 2011).  Therefore, before turning to the other factors the court should first

20   addresses the question of culpable conduct by examining the reason for the default, including

21   whether it was within the reasonable control of the defense, and whether the defendant acted in

22   good faith.

23         As to "culpable conduct," the Ninth Circuit has observed that "a defendant's conduct is

24   culpable if he has received actual or constructive notice of the filing of the action and

25   intentionally failed to answer."  *TCI Group Life Ins. Plan*, 244 F.3d at 697 (emphasis in original)

26   (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988), and citing

27   *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)).  In *Pincay v. Andrews*, 389

28   F.3d 853, 855 (9th Cir. 2004) (en banc), the Ninth Circuit further noted that the concept of

1  culpable conduct must be viewed in the context of *Pioneer Investment Services Co. v. Brunswick*

2  *Associates Ltd. Partnership*, 507 U.S. 380, 394 (1993), which notes that "for purposes of Rule

3  60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply

4  with a filing deadline is attributable to negligence."  The Supreme Court pointedly observed in

5  *Pioneer Investment Services* that '[t]his leaves of course, the Rule's requirement that the party's

6  neglect of the [filing deadline] be 'excusable.'"  *Id.* at 395.  At bottom, this determination is "an

7  equitable one, taking account of all relevant circumstances surrounding the party's omission[,]"

8  including "the danger of prejudice to the [plaintiff], the length of the delay and its potential

9  impact on judicial proceedings, the reason for the delay, including whether it was within the

10  reasonable control of the movant, and whether the movant acted in good faith."  *Id.*

11      Here, Crane's failure to timely respond to the complaint is problematic.  It was not due to

12  excusable neglect.  Crane concedes that it was served with a copy of the summons and complaint

13  on May 27, 2016, and that it was required to file a responsive pleading by June 17, 2016, but

14  failed to do so.  ECF No. 16 at 3; *see* ECF No. 6 (certificate of service).

15      Crane argues that its failure to file a responsive pleading was excusable because:

16          unlike situations with a defendant not well-versed in the legal
           process, here Crane is too involved in the Underlying Action, and
17          along with its counsel has devoted over two years to an incredibly
           complicated and multi-faceted lawsuit.  Quite simply, Crane has
18          over one half-dozen additional insurance carriers defending it in
           that matter, in addition to its own, along with two attorneys
19          working exclusively on the matter.  Crane does not dispute that it
           indeed failed to appropriately filed [sic] a responsive pleading, but
20          the extraneous issues caused it to miss the deadline.

21  ECF No. 16 at 5.

22      This convoluted explanation sheds little light on why Crane failed to timely respond.

23  Distinguishing Crane from defendants "not well versed in the law" is a distinction that

24  undermines, not supports, the case for excusable neglect.  Similarly, pointing out that Crane and

25  its counsel view the matter as complicated and have assigned two attorneys to work exclusively

26  on the matter undermines the case for excusable neglect in defaulting on the complaint.

27  In the same vein, the declaration from Jon Hammerbeck, Crane's counsel, fails to justify Crane's

28  failure to properly calendar and comply with the deadline for filing a timely response.  Mr.

1    Hammerbeck states that on "July 6, 2016, my firm and I first became aware of the entry of default

2    against Crane by checking the online civil docket with the United States District Court, Eastern

3    District of California."  Declaration of Jon Hammerbeck, ECF No. 16-2 ¶ 5.  He also details the

4    efforts he made to try and reach a stipulation with plaintiff to set aside default.  But the date on

5    which counsel learned of the entry of default and his reaction to that discovery does not explain

6    why the deadline was missed in the first place.  Moreover, at the October 26 hearing counsel for

7    Crane was unable to provide any reasonable justification.  Instead, counsel vaguely argued that

8    Crane was "inundated" with the underlying litigation and thus too busy to file a response.

9    Whatever can be said of this too-busy-to respond explanation, it does not excuse Crane from

10   seeking an extension of time to file a response.  *See* Fed. R. Civ. P. 6(b).

11          Furthermore, Crane's "too busy" theory is not supported by the record before the court.  In

12   support of its motion, Crane submitted emails between the parties' counsel.  In an email sent on

13   July 8, 2016, Crane's counsel conceded that Crane was served on May 27, 2016, but represented

14   that a responsive pleading was not timely filed because Crane was "awaiting a response from

15   [insurance] carriers as to whether [Ford, Walker, Haggerty & Behar][3] would be retained to

16   represent Crane Development in the action, but unfortunately no response had been provided."

17   ECF No. 16-2 at 23.  This email indicates that Crane received actual notice of this action but,

18   rather than obtaining its own attorney to represent its interests, it decided to delay filing a

19   responsive pleading until after an insurance company agreed to foot the legal bill for defending

20   this suit.  There may be reasons for this deliberate and considered decision not to file a response

21   by the deadline, but it hardly excuses the choice to do so without seeking and obtaining an

22   extension of time.

23          In short, Crane's culpable conduct led to the entry of its default and there is no reason to

24   set it aside.  *TCI Group Life Ins. Plan*, 244 F.3d at 697 ("[A] defendant's conduct is culpable if he

25   has received actual or constructive notice of the filing of the action and *intentionally* failed to

26   answer.") (emphasis in original); *Brandt*, 653 F.3d at 1111 ("[A] finding of culpability on the part

27

28          [3]  Ford, Walker, Haggerty & Behar is the firm representing Crane in this action.

1   of a defaulting defendant is sufficient to justify the district court's exercise of its discretion to

2   deny relief from a default judgment.").  But there is a further reason not to set aside the clerk's

3   entry of default.  Crane has failed to establish that it has a meritorious defense.

4        To justify setting aside its default, Crane must also "present the district court with specific

5   facts that would constitute a defense."  *Franchise Holding II, LLC v. Huntington Restaurant*

6   *Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).  "[C]onclusory statements that a dispute existed"

7   or provided a "general denial without facts to support it is not enough to justify vacating a default

8   or default judgment."  *Id.* (quotations omitted).

9        Crane argues that its "defenses to the lawsuit all revolve around the basic premise that

10  Plaintiff, indeed, does owe Crane a duty to defend and duty to indemnify Crane for any judgment

11  or settlement that Plaintiff become [sic] obligated to pay in the Underlying Action.  Obviously,

12  these are questioned based upon (1) the language of the insurance policies, and (2) the as-yet-

13  unachieved conclusion to the Underlying Action."  ECF No. 16 at 6; ECF No. 16-1 ¶ 8.  Crane

14  does not, however, cite to any language in the insurance policy or identify any facts that, if

15  accepted as true, would support its conclusory contention that it has a meritorious defense.

16  Furthermore, as discussed below regarding Mt. Hawley's motion for default judgment, the

17  information and evidence that is before the court demonstrates that Crane lacks any such defense.

18  The lack of a meritorious defense provides an additional basis for declining to set aside Crane's

19  default.  *See Hayhurst*, 227 F.3d at 1108-09 (9th Cir. 2000) (the three part test for setting aside

20  default is disjunctive, "meaning that the district court is free to deny the motion if any of these

21  three factors is shown to exist.").

22       Accordingly, Crane's motion to set aside default should be denied.

23  III.   <u>Motion for Default Judgment</u>

24       Mt. Hawley moves for default judgment against Crane, seeking a judicial declaration that

25  it has no duty to defend or indemnify Crane for liabilities it may sustain in the underlying case.

26  ECF No. 11.

27  /////

28  /////

8

A.     Legal standards

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.  "In applying this discretionary standard, default judgments are more often granted than denied."  *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D.Cal.2003) (quoting *PepsiCo, Inc. v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.Cal.1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages.  *Tele Video Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.1987) (citations omitted).  However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

B.     Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors

1.     Factor One: Possibility of Prejudice to the Defendant

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  *See Cal. Sec. Cans*, 238 F. Supp. 2d at 1177.  Here, Crane has now appeared

1   in this action and has represented that it intends to defend against plaintiff's claim.  Accordingly,

2   this factor weighs against default judgment.

3           2.    Factors Two and Three: The Merits of Defendant's Substantive Claims and

4               the Sufficiency of the Complaint

5        The merits of plaintiff's substantive claim and the sufficiency of the complaint should be

6   discussed together because of the relatedness of the two inquires.  The court must consider

7   whether the allegations in the complaint are sufficient to state a claim that supports the relief

8   sought.  *See Danning v. Lavine*, 572 F.2d 1386, 1388(9th Cir. 1978); *Cal. Sec. Cans*, 238 F. Supp.

9   2d at 1175.

10        The complaint asserts a single claim seeking a judicial declaration that plaintiff does not

11   have a duty to defend or indemnify Crane under the terms of the parties' insurance policies.  ECF

12   No. 1.  Under the Declaratory Judgment Act, the court has authority to "declare the rights and

13   other legal relations" of parties to "a case of actual controversy."  28 U.S.C. § 2201(a).  District

14   courts have discretion in determining whether to entertain actions for declaratory relief.  *Public*

15   *Affairs Associates v. Rickover*, 369 U.S. 111, 112 (1962) (The Declaratory Judgment Act "gave

16   the federal courts competence to make a declaration of rights; it did not impose a duty to do so.");

17   *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1989); *Government Employees*

18   *Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (the decision to entertain a claim for

19   declaratory relief is discretionary, "for the Declaratory Judgment Act is 'deliberately cast in terms

20   of permissive, rather than mandatory, authority.'").

21        A suit seeking declaratory relief must present an actual case or controversy within the

22   meaning of Article III, section 2 of the United States Constitution.  *Dizol*, 133 F.3d at 1222.  If

23   the case is ripe for review, "declaratory relief is appropriate (1) when the judgment will serve a

24   useful purpose in clarifying and settling the legal relationships in issue, and (2) when it will

25   terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the

26   proceeding."  *Eureka Fed. Sav. & Loan Assn. v. American Cas. Co.*, 873 F.2d 229, 231 (9th Cir.

27   1989) (quotations omitted).

28   /////

1    The instant case, which seeks a judicial determination regarding Mt. Hawley's obligation

2  to defend and indemnify Crane in the underlying case presents an actual case or controversy

3  within the meaning Article III.   *See American States Ins. Co. v. Kearns*, 15 F.3d 142 (9th Cir.

4  1994) (finding a sufficiently ripe case or controversy "where the insurer sought a declaration

5  regarding its duty to defend and indemnify its insured in a pending state court liability suit.").

6  Moreover, declaratory relief is appropriate in this case because such relief will terminate

7  uncertainty by clarifying Mt. Hawley's obligations under the insurance policies.

8    Further, the complaint alleges sufficient facts to establish plaintiff's entitlement to a

9  declaration that it is not liable to Crane for any liability Crane may sustain in relation to the

10  underlying case.  With the exception of ABA's negligent misrepresentation and breach of

11  fiduciary duty claims, the claims allege that Crane is responsible for various construction defects

12  in relation to the construction of the hotel, which was completed in January 2010.  ECF No. 1

13  ¶¶ 28-31.  However, the insurance policies, which were effective from June 12, 2012 to June 12,

14  2015, excluded coverage for damages sustained by defects that predated the inception of the

15  policies.  The Continuous or Progressive Injury and Damage Exclusion ("CPID Exclusion") of

16  the CGL policies precludes coverage for conditions "which were caused, or . . . alleged to have

17  been caused, by any defect, deficiency, inadequacy or condition which first existed prior to the

18  inception date of" the policy.  ECF No. 1-1 at 54; ECF No. 1-2 at 54; ECF No. 1-3 at 61.  The

19  CPID exclusion contained in the CGL policies was also applicable to the Excess Liability

20  policies.  ECF No. 1-4 at 8; ECF No. 1-5 at 8; ECF No. 1-6 at 8 (stating that the Excessive

21  Liability policies are "subject to all of the conditions, agreements, exclusions, and limitations of

22  and shall follow the underlying insurance in all respects.  This includes changes by

23  endorsement.").

24    As the construction of the project was completed in January 2010, any construction defect

25  must have existed prior to the issuance of the insurance policies.  As the CPID exclusion

26  precludes coverage for defects that "first existed prior to the inception date" of the policies, Mt.

27  Hawley is not required to defend or indemnify Crane for any liability is sustains related to the

28  construction defect claims.

As for ABA's negligent misrepresentation and breach of fiduciary duty claims—which are the only claims against Crane not predicated on construct defects—these claims do not involve "property damage" and therefore are not covered under the policies.[4]  Under the policies, property damages includes "a. Physical injury to tangible property, including all resulting loss of use of that property . . .; or b. Loss of use of tangible property that is not physically injured."  ECF No. 1-1 at 22; ECF No. 1-2 at 22; ECF No. 1-3 at 22.

In its negligent misrepresentation claim and breach of fiduciary duty claim, ABA alleges that Crane submitted incorrect invoices for payment; altered lien releases of subcontractors to state incorrect amounts; submitted construction draw requests that overstated the dollar amount owed; failed to perform proper accounting; and accepted overpayment from ABA based on its fraudulent invoices.  *Id.* ¶¶ 32, 33.  These claims do not concern physical injury or loss of use of tangible property as defined by the policies.  Accordingly, these claims are not covered by the insurance policies.

Thus, the complaint's allegations, as well as the insurance policies appended to the complaint, establish that Mt. Hawley has no obligation to defend or indemnify Crane in the underlying action.  Accordingly these *Eitel* factors favor an entry of default judgment.

### 3.   Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *Cal. Sec. Cans,* 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc.*, 219 F.R.D. at 500.  "If the sum of money at stake is completely disproportionate or inappropriate considering the defendant's actions, default

/////

---

[4]  In addition to covering "bodily injury and property damage," the policies cover "personal and advertising injury" and "medical payments."  *See* ECF No. 1-1; ECF No. 1-2; ECF No. 1-3.  The policies define "personal and advertising injury" to include bodily injury arising out of false arrest; malicious prosecution; wrongful eviction; wrongful invasion of the right of private occupancy; slander or libel; or use of another's advertising idea, copyright, trade dress or slogan.  ECF No. 1-1 at 22; ECF No. 1-2 at 22; ECF No. 1-3 at 22.  The negligent misrepresentation claim and breach of fiduciary duty claim do not involve "personal and advertising injury" or medical payments.

judgment is disfavored." *Webb v. Indigenous Glob. Dev. Corp.*, No. C-04-3174 MJJ, 2005 WL 1200203, at *4 (N.D. Cal. May 16, 2005).

According to the complaint, the policies issued to Crane have limits of $10 million.  ECF No. 1 ¶ 6.  While this amount is very substantial, its significance here is tempered by the low probability that Mt. Hawley has any obligation to Crane for sums sought in the underlying state court litigation.  The complaint and its attachments indicate that alleged damages Crane may sustain in the underlying action are not covered by the insurance policies.  Accordingly, the sum of money at stake does not make the entry of default judgment inappropriate.

### 4.   Factor Five: The Possibility of Dispute Concerning Material Facts

The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default.  *See Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord *Philip Morris USA, Inc.*, 219 F.R.D. at 500; *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177.  Accepting the plaintiff's allegations as true, there will likely be no dispute concerning a material fact.  Therefore, this *Eitel* factor favors the entry of a default judgment.

### 5.   Factor Six: Whether Default was Due to Excusable Neglect

The sixth factor—whether Crane's default was due to excusable neglect—also weighs in favor of default judgment.  As discussed above, Crane's culpable conduct is responsible for the entry of its default.  Accordingly, this factor weighs in favor of default judgment.

### 6.   Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  "Default judgments are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits." *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974).  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive . . . ." *PepsiCo, Inc., 238 F. Supp. 2d at 1177*; see also *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010); *Hartung v. J.D. Byrider, Inc.*, 2009

1  WL 1876690, at *5 (E.D. Cal. June 26, 2009).  While Crane has now belatedly appeared in this

2  action and moved to set aside default, indicating its willingness to litigate the merits of this case,

3  the court does not find that this should preclude entry of default judgment.

4         On balance, the *Eitel* factors weigh in favor of granting plaintiff's motion for default

5  judgment.

6  IV.    Conclusion

7         Accordingly, it is hereby RECOMMENDED that:

8         1. Defendant Crane Development Corporation's motion to set aside default (ECF No. 16)

9  be denied;

10         2.  Plaintiff's motion for default judgment (ECF No. 11) be granted;

11         3.  Plaintiff be awarded a declaration that it has no obligation to indemnify or defend

12  Crane Development Corporation for any judgment or settlement that it becomes obligated to pay

13  in the state court case entitled *ABA Roseville, LLC v. Crane Development Corp.*, San Diego

14  County Superior Court Case No. 37-2014-00005108-CU-CD-CTL; and

15         4.  The Clerk be directed to close the case.

16         These findings and recommendations are submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

18  after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

21  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

22  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

23  DATED:  March 8, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE